224 P.3d 775 (2009)
153 Wash.App. 241
NEIGHBORHOOD ALLIANCE OF SPOKANE COUNTY, a non-profit corporation, Appellant,
v.
COUNTY OF SPOKANE, a political subdivision of the State of Washington, Respondent.
No. 27184-6-III.
Court of Appeals of Washington, Division 3.
August 11, 2009.
*777 Breean L. Beggs, Center for Justice, Bonne W. Beavers, Spokane, WA, for Appellant.
Patrick Mark Risken, Attorney at Law, Spokane, WA, for Respondent.
KULIK, A.C.J.
¶ 1 The Neighborhood Alliance of Spokane County (Alliance) brought an action against Spokane County (County) for its alleged failure to disclose records requested under Washington's public records act (PRA),[1] former chapter 42.17 RCW. Both parties moved for summary judgment. The court granted summary judgment to the County.
¶ 2 We hold that the County failed to adequately search its records when it did not examine the original computer where the requested record was created. Thus, we reverse *778 summary judgment for the County on this issue. However, we affirm the summary judgment in favor of the County on its response to the Alliance's request for records relating to names on the seating chart because the Alliance had received these records under a separate request. Finally, we affirm the trial court's denial of the Alliance's motion to compel.

FACTS
¶ 3 The Alliance is a nonprofit, community-based organization that emphasizes "government accountability, especially in land use and planning issues." Clerk's Papers (CP) at 91.
¶ 4 The Alliance received a letter from what appeared to be an anonymous whistleblower complaining about potential illegal hiring practices in Spokane County's Building and Planning Department (BPD). The letter included a copy of an undated seating chart, allegedly depicting office space for staff in the BPD. The chart, which appears as a map or floor plan of the first floor of the BPD, depicts the location of cubicles and identifies the seating arrangement for approximately 18 current or prospective employees within those cubicles. The seating chart listed only employees' first names, including two in one cubicle, "Ron & Steve." CP at 88. The name "Steve" was also listed on the seating chart in a separate cubicle with what appeared to be a telephone extension number of "7221." CP at 88.
¶ 5 The letter stated that the chart was found in the printer at the BPD on February 16, 2005. Numerous copies were circulated to BPD employees on or about February 16. The chart originated from Pam Knutsen's computer. Ms. Knutsen is the assistant director of building and planning for Spokane County. The letter claimed that the positions occupied by Ron and Steve on the seating chart had not yet been posted for hiring as required by the County's personnel rules.
¶ 6 The Alliance took a strong interest in the allegations when the names Ron and Steve on the February seating chart matched the first names of the department employees hired several weeks laterRon Hand and Steve Harris. This led the Alliance to believe the County may have engaged in illegal hiring practices.
¶ 7 In early March 2005, Spokane County posted notice of two openings for the position of development assistant coordinator. In mid-March, Spokane County hired Steve Harris as development assistance coordinator 1 to work with Ron Hand, who had also been recently hired as development assistance coordinator 2. Steve Harris is the son of then-Commissioner Phil Harris, and the third son of Phil Harris to be hired by Spokane County.
¶ 8 Bonnie Mager, then executive director of the Alliance, filed public records requests for documents that would substantiate the date of the seating chart and the full names of the employees listed on the chart.
¶ 9 On May 3, 2005, Ms. Mager, on behalf of the Alliance, sent a public records request to the County, asking to review all records created in January 2005, February 2005, and March 2005 "that display either current or proposed office space assignments for County Building and Planning Department officials and employees." CP at 277. On May 11, the County provided Ms. Mager with three "proposed seating assignment charts." CP at 277. The first seating chart was undated. That chart appeared identical to the seating chart provided to the Alliance in February, and included the names Ron and Steve as well as Steve 7221. The other two versions of the chart were dated February 22, 2005, and April 18, 2005. The February 22, 2005 chart no longer had the names Ron and Steve in a cubicle but, instead, simply had the word "New" in two other cubicles. CP at 279.
¶ 10 Then, on May 16, 2005, the Alliance sent a second public records request to the County, addressed to the human resources director for Spokane County, Cathy Malzahn. The request asked for information regarding electronic file information logs for the undated BPD seating chart and records pertaining to the identities of Ron and Steve on the seating chart. The Alliance requested:
1) The complete electronic file information logs for the undated county planning division *779 seating chart provided by Ms. Knutsen to the Neighborhood Alliance on May 13th. This information should include, but not necessarily be limited to, the information in the "date created" data field for the document as it exists on the specific Microsoft Publisher electronic document file created for the referenced seating chart. The requested information should also include, but not be limited to, the computer operating system(s) data record indicating the date of creation and dates of modification for the referenced seating chart document.
2) The identities of "Ron & Steve" individuals who are situated near the center of the seating chart referenced in item # 1. Also, the identity of the individual listed as "Steve" in the cubicle with the number 7221 at the top of the chart.[[2]]
By the term public records, I am invoking a broad definition, consistent with [former] RCW 42.17.020(36) [(2002)] and specifically mean to include records that exist in any electronic form as well as those that exist on paper. This should be read to include, but not be limited to, records preserved in paper correspondence, electronic mail, facsimiles, videotape, and computer files.
Pursuant to [former] RCW 42.17.310 [(2003)], please identify any record covered by the above requests that is being withheld as exempt, and provide a summary of the record's content and the specific reason for the exemption.
CP at 51-52.
¶ 11 The County responded by letter dated May 23, 2005, stating that the County would complete its response process by June 6, 2005.
¶ 12 The County responded to the Alliance's May 16, 2005 public records request by letter dated June 6, 2005. Addressing the first paragraph of the Alliance's request, referred to by the parties as Item 1, the County's letter stated "[c]onsistent with your Public Disclosure Request, enclosed you will find a copy of the `date created' data file[s] as requested." CP at 54. The County attached a single documentan electronic file information log. The log contained the name, location, date created, date modified, and date accessed information for the seating chart and several other documents.
¶ 13 The log showed that the date created for each document listed was either April 26 or April 27, 2005. However, the date created field listed on the information log showed that each of the documents, including the seating chart, were created after the date modified. The seating chart showed a date last modified of February 22, 2005. No other information was provided in the County's June 6 response regarding the discrepancies between the dates of creation for the listed documents, nor was there any explanation of the search that was used to identify these documents.
¶ 14 The County did not provide any records in response to Item 2the identities of Ron and Steveof the Alliance's May 16, 2005 public records request. The County's letter stated that the statutory disclosure statement "does not require agencies to explain public records. As such, no response is required with respect to item number 2 referenced above." CP at 54.
¶ 15 Nevertheless, with regard to Item 2, Ms. Knutsen later stated in a declaration that her "search for documents which might reference the identities of `Ron and Steve' and `Steve' turned up nothing. Stated another way, there are no documents which reference the seating chart and identify the full names of `Ron and Steve' or `Steve' therein." CP at 62.
¶ 16 The director of the information systems department (ISD) for Spokane County, Bill Fiedler, later explained the discrepancy in the electronic log file dates by stating that Ms. Knutsen's personal computer was replaced in April 2005 as part of routine maintenance. During that process, all documents that were on the hard drive of her old computer were transferred to her new computer. Mr. Fiedler explained that when that copying takes place, all documents are given a new date created. After all the documents were copied, the new computer was then delivered to Ms. Knutsen.
*780 ¶ 17 Mr. Fiedler further stated that the ISD then takes the old computer and hard drive back to its office where it wipes all data off the old hard drive. According to Mr. Fiedler, data stored on local computer hard drives, including Ms. Knutsen's, are not backed up through the County network. "Therefore, the only information contained in that particular computer's Hard Drive would be found on its hard drive." CP at 58. Mr. Fiedler did not state that Ms. Knutsen's old computer, from which the seating chart had originated, had been searched.
¶ 18 The Alliance subsequently obtained the declaration of Bruce Hunt, a senior planner at the BPD, who stated that it was routine policy for staff to copy and paste all County work from staff C drives on their individual computers to network drives for backup and storage. Thereafter, the Alliance believed that if the information was stored on a server rather than on an individual computer, the County could have provided the actual date the seating chart file was created by accessing a backup file.
¶ 19 On October 7, 2005, counsel for the Alliance wrote a letter to the Spokane County Deputy Prosecutor Jim Emacio seeking compliance with the May 16, 2005 public records request. In that letter, the Alliance attempted to clarify its May 16, 2005 request, particularly Item 2, the identities of Ron and Steve. The letter states:
[I]n an effort to confirm that Steve Harris was the "Steve" listed on the February 16, 2005 seating chart, the letter asked the County for any documents identifying or clarifying the identities of "Ron" and "Steve:"
....
In essence, the request asked for any document that would have had the full name of the "Steve" listed on the seating chart in the same office space as "Ron." My client believes that person is Steve Harris, but wants to confirm this belief with the County's own documentsthat Steve Harris is, indeed, the person listed in the February 16 seating chart. The request did not ask for the identity of "Steve," only for the County documents with his name on them.
CP at 68-69 (emphasis added).
¶ 20 That was followed by a letter from the Alliance to Mr. Emacio, dated October 31, 2005, which added new requests regarding Item 1 of the May 16, 2005 records request and the maintenance of Ms. Knutsen's computer. The County responded timely and the Alliance has not challenged these responses to the additional requests in the October 31, 2005 letter.
¶ 21 At some point, Ms. Knutsen's old computer had its hard drive wiped, and in August 2005 it was given to Spokane County employee Gloria Wendel. By letter dated November 28, 2005, the Alliance made another public records request for the "email or memo requesting that Ms. Wendel receive Ms. Knutsen's computer and the documentation showing when Ms. Knutsen's computer was wiped of data." CP at 595. The County responded on December 5, 2005, by providing records regarding computer work done for Ms. Wendel in August 2005.
¶ 22 Procedural History. The Alliance filed suit against Spokane County on May 1, 2006, claiming that the County violated the public records act by failing to provide the requested records. Approximately one month later, the Alliance commenced discovery by serving on the County one set of requests for admission and one set of interrogatories and requests for production. The discovery explores not only the May 16, 2005 request, but also the additional requests made on October 31, 2005.
¶ 23 On May 24, 2006, attorney Patrick Riskin of Evans, Craven & Lackie, filed a notice of appearance on behalf of the County. The County then filed timely objections to all of the requests for admission and provided limited answers to 6 of 26 requests. The County did not answer the Alliance's interrogatories and requests for production; rather, in November, it moved for summary judgment and, in December 2006, it moved for a protective order.
¶ 24 From August through November 2006, the Alliance attempted to arrange depositions of county employees, particularly *781 Ms. Knutsen, and to receive answers to its written discovery. The County agreed to submit answers to written discovery by September and schedule a deposition of Ms. Knutsen by mid-October 2006. On
¶ 25 October 30, 2006, the County agreed that Ms. Knutsen's deposition would be scheduled in December.
¶ 26 However, on November 16, 2006, the County moved for summary judgment. In support of its motion, the County filed affidavits by Ms. Malzahn, Ms. Knutsen, and Mr. Fiedler. The County argued that the Alliance was provided exactly what it asked for in Item 1 of its May 16, 2005 request, and that it was not required to interpret the seating chart already in the Alliance's possession, in response to Item 2. The County argued that its response to the Alliance's "very limited request for public records" was handled appropriately and in accordance with the public disclosure act. CP at 43. The County argued that unless the Alliance could demonstrate that the County did, in fact, possess further nonexempt records which were encompassed by the May 16, 2005 request for public records and had wrongfully withheld them, the Alliance's case must be dismissed.
¶ 27 Shortly thereafter, in order to avoid defending against summary judgment without discovery, the Alliance asked the County for a brief continuance until discovery could be completed. The County rejected the request and informed the Alliance that it would refuse to provide any discovery answers in writing or by deposition.
¶ 28 On November 30, 2006, the Alliance filed a motion to compel discovery and continue summary judgment. In its motion, the Alliance sought an order under CR 37 compelling the deposition of Ms. Knutsen, responses to written discovery, and a continuance of the County's summary judgment motion under CR 56(f) until full discovery was provided. The County moved for a protective order.
¶ 29 In support of its motion to compel, the Alliance attached the declaration of attorney Breean Briggs, which included pages from two internal Spokane County telephone directories that list Steve Davenport at telephone extension 7221, the same number listed next to his name on the February seating chart, as well as Ron Hand. The Alliance argued that these documents would have been responsive to its records request because they contained the identities of Ron and Steve at 7221. The Alliance pointed out that the County refused to provide these and other similar records, including documents that recorded the identity of the other person named Steve from the seating chart.
¶ 30 On December 5, 2006, the court heard the Alliance's motions to compel and to continue the summary judgment hearing. Prior to, and during the hearing, the Alliance offered to narrow initial discovery, including depositions, to the core issues of liability namely, whether documents existed at the time the request was made and the search processesand to delay discovery on issues related to penalties until after summary judgment on liability. In its oral ruling, the trial court ordered the deposition of Ms. Knutsen by written questions under CR 31. The trial court narrowed the scope of the questions to the following two issues: whether documents existed that were responsive to the May 16, 2005 records request, and the process used to find them. The court continued the summary judgment hearing and the motion to compel.
¶ 31 The written deposition of Ms. Knutsen was finally taken on October 12, 2007, and Ms. Knutsen answered 18 out of 53 questions. Four months later, the County provided answers to five more written questions. The County admitted that it did not know the date Ms. Knutsen's hard drive on her old computer was wiped and that there was no record that it was wiped prior to the May 16, 2005 request for records from that computer's hard drive. The County's response indicates that it had made no efforts to confirm whether Ms. Knutsen's old computer retained any record of the seating chart. In its answers to remaining deposition questions, the County responded as follows:

QUESTION 9. Please identify the date that the data on Pam Knutsen's "old PC" was wiped off its hard drive as described *782 in the Affidavit of Bill Fiedler at paragraph 6 (Exhibit 3).

ANSWER: Unknown.

QUESTION 10. Please identify the person who performed the data wipe as described in the previous question.

ANSWER: To the best of our knowledge, Angela Kane. However, it could have been John Schlosser. There is no record of who did that work or when precisely it was done.
....

QUESTION 12. Please describe any and all efforts made by County employees to confirm whether or not Pam Knutsen's old "PC" retained any record of the seating chart at Exhibit 1 to this deposition.

ANSWER: There are no efforts in that regard, on this or any other computer. Once a PC is "wiped" there is no reason to check to see if that process was completed or successful.
CP at 610-11.
¶ 32 On April 4 and May 6, 2008, the Alliance filed a cross-motion for summary judgment and a response, supported by affidavits from the County's BPD. The County asked the trial court to strike these declarations as irrelevant and speculative.
¶ 33 At the hearing on May 13, 2008, the parties agreed to argue their respective summary judgment motions first and reach discovery issues as necessary. Finding there had been ample time for discovery, the trial court denied the Alliance's motion to compel discovery and granted summary judgment to the County. This appeal followed.

ANALYSIS
¶ 34 A. Standard of Review. We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. Lybbert v. Grant County, 141 Wash.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. Santa Fe R.R., 153 Wash.2d 780, 789, 108 P.3d 1220 (2005). When considering a summary judgment motion, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. Lybbert, 141 Wash.2d at 34, 1 P.3d 1124. Factual issues may be decided as a matter of law only if reasonable minds could reach but one conclusion. Sherman v. State, 128 Wash.2d 164, 184, 905 P.2d 355 (1995).
¶ 35 The first issue on appeal concerns whether the trial court erroneously granted the County's motion for summary judgment. The Alliance contends that it was entitled to summary judgment because the County violated the PRA by failing to conduct a reasonable search for the documents requested. The County contends that the Alliance failed to present admissible, credible evidence beyond "wild speculation and conspiracy theories" demonstrating that the County violated the PRA when it responded to the Alliance's May 16, 2005 public records request. Br. of Resp't at 19.
¶ 36 B. Public Records Act. The public records provisions of the public disclosure act were enacted in 1972 by initiative, formerly chapter 42.17 RCW, now codified at chapter 42.56 RCW. The PRA is a "`strongly worded mandate for broad disclosure of public records.'" Progressive Animal Welfare Soc'y v. Univ. of Wa., 125 Wash.2d 243, 250-51, 884 P.2d 592 (1994) (quoting Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978)). Courts must liberally construe the PRA's disclosure provisions to promote full access to public records and narrowly construe its exemptions. Former RCW 42.17.251 (1992). We are cognizant of the PRA's policy "that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." Smith v. Okanogan County, 100 Wash.App. 7, 11, 994 P.2d 857 (2000) (quoting former RCW 42.17.340(3) (1992)).
¶ 37 Under the PRA, all state and local agencies must make available for public inspection and copying any public record not falling within a statutory exemption.
*783 ¶ 38 Former RCW 42.17.260(1) (1997). The PRA requires agencies to provide "`the fullest assistance to inquirers and the most timely possible action on requests for information.'" Spokane Research & Defense Fund v. West Cent. Cmty. Dev. Ass'n, 133 Wash.App. 602, 606, 137 P.3d 120 (2006) (quoting former RCW 42.17.290 (1995)). Further, agencies "shall not distinguish among persons requesting records, and such persons shall not be required to provide information as to the purpose for the request" except under very limited circumstances. Former RCW 42.17.270 (1987). "The agency has the burden of proving that refusing to disclose `is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.'" Smith, 100 Wash.App. at 11, 994 P.2d 857 (quoting former RCW 42.17.340(1)).
¶ 39 The PRA closely parallels the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970), as amended, (Supp.V, 1975); thus, where appropriate, Washington courts look to judicial interpretations of FOIA in construing the PRA. Hearst Corp., 90 Wash.2d at 128, 580 P.2d 246.
¶ 40 C. The Electronic Information Log-Item 1. The Alliance first contends that the County violated the PRA by failing to conduct a reasonably adequate search for the electronic information log of the BPD's seating chart, including the date created data field. The Alliance asserts, and the County does not dispute, that the County did not search Ms. Knutsen's original computer.
¶ 41 "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." Citizens Comm'n on Human Rights v. Food & Drug Admin., 45 F.3d 1325, 1328 (9th Cir.1995). An agency fulfills its obligations under the PRA if it can demonstrate beyond a material doubt that its search was "`reasonably calculated to uncover all relevant documents.'" Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C.Cir.1984) (quoting Weisberg v. Dep't of Justice, 705 F.2d 1344, 1350-51 (D.C.Cir.1983)). Moreover, the agency must show that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C.Cir.1990).
¶ 42 Importantly, the adequacy of an agency's search is separate from the question of whether the requested documents are found. Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C.Cir.1999). As the federal courts have made clear, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg, 745 F.2d at 1485. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends upon the particular facts of each case. Id.
¶ 43 At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the trial court may rely on affidavits submitted by the agency demonstrating the adequacy of the search. Valencia-Lucena, 180 F.3d at 326 (quoting Oglesby, 920 F.2d at 68). Affidavits describing agency search procedures are sufficient for summary judgment purposes only if they were relatively detailed, nonconclusory, and not impugned by evidence in the record of bad faith on the part of the agency. Zemansky v. U.S. Envtl. Prot. Agency, 767 F.2d 569, 573 (9th Cir. 1985) (quoting McGehee v. Cent. Intelligence Agency, 697 F.2d 1095, 1102 (D.C.Cir.1983)). Such affidavits must set forth the search terms and the type of search performed, and aver that all files likely to contain responsive materials, if such records exist, were searched. Valencia-Lucena, 180 F.3d at 326 (quoting Oglesby, 920 F.2d at 68).
¶ 44 However, if a review of the record raises substantial doubt, particularly where the requests are well defined and there are positive indications of overlooked materials, summary judgment in favor of the agency is inappropriate. Id. (quoting Founding Church of Scientology v. Nat'l Sec. Agency, 610 F.2d 824, 837 (D.C.Cir.1979)).
¶ 45 Here, the County did not provide the record requesteda complete electronic *784 information log showing the date of creation of the County's seating chartbecause it could not be located on Ms. Knutsen's new computer. But Ms. Knutsen's new computer was the only place searched. Mr. Fiedler explained that the original information log could not be found on Ms. Knutsen's new computer because documents on employees' personal or C drives are not backed up on the County network, and therefore, "the only information contained in that particular computer's Hard Drive would be found on its hard drive." CP at 58. Mr. Fiedler appeared to suggest that the log also could not be found on Ms. Knutsen's old hard drive because "standard practice of the County of Spokane ISD" is to wipe hard drives before they are sold or rebuilt and that "this process was followed with regard to Ms. Knutsen's PC in April 2005." CP at 58. Mr. Fiedler did not state that Ms. Knutsen's old computer had been searched.
¶ 46 However, the evidence shows that Ms. Knutsen's computer was rebuilt and given to another employee in August 2005almost three months after the Alliance's request. Contrary to Mr. Fiedler's affidavit, the County admitted it does not know whether the wipe occurred in April 2005. Not only does the County admit that it does not know whether the wipe occurred and has no records showing when the hard drive in Ms. Knutsen's old computer was wiped, or who performed that work, the County admits it made no effort to find out in response to the Alliance's May 16, 2005 request.
¶ 47 In Campbell v. United States Department of Justice, 164 F.3d 20, 28-29 (D.C.Cir. 1998), the court held that a search was inadequate when it was evident from the agency's disclosed records that a search of another of its records system might uncover the documents sought. The court in Campbell held that the agency "`cannot limit its search'" to only one place if there are additional sources "`that are likely to turn up the information requested.'" Id. at 28 (quoting Oglesby, 920 F.2d at 68). The court explained:
An agency has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is "reasonable" in a particular case to account for leads that emerge during its inquiry. Consequently, the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception.
Id. Likewise, the court in Valencia-Lucena stated: "[T]his court has required agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." Valencia-Lucena, 180 F.3d at 325.
¶ 48 The Alliance persuasively argues that the County's affidavits regarding this issue are conclusory, fail to provide sufficient detail to evidence an adequate search, and are controverted by other evidence in the record. "It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated ... to search barring an undue burden." Id. at 327 (agency's "failure to search the center it had identified as a likely place where the requested documents might be located clearly raises a genuine issue of material fact as to the adequacy of the [agency's] search").
¶ 49 The County failed to conduct an adequate search for the complete electronic information log showing the date the seating chart was created. It did not search the computer Ms. Knutsen was using when the seating chart was created. On de novo review, the record indicates that the search was deficient and summary judgment for the County was not proper.
¶ 50 D. Identities of Ron and Steve Item 2. The Alliance also contends that the County failed to conduct an adequate search for the records responsive to the second paragraph of its May 16, 2005 records request.
¶ 51 The Alliance's May 16, 2005 records request asked for documents that recorded "[t]he identities of `Ron & Steve' individuals who are situated near the center of the seating chart [and] the identity of the individual listed as `Steve' in the cubicle with the number 7221 at the top of the chart." CP at 51. In response to this item, the County stated that it was not required to explain or interpret *785 public records. Nonetheless, Ms. Knutsen later stated in an affidavit that she conducted a search for documents which might reference the identities Ron and Steve and Steve, but found none. Specifically, she stated: "[T]here are no documents which reference the seating chart and identify the full names of `Ron and Steve' or `Steve' therein." CP at 62.
¶ 52 The Alliance argues that at the time of the May 16, 2005 request, the County had at least three documents responsive to the second item. The Alliance points to e-mails of March 2005 regarding logistical support for Ron Hand's and Steve Harris's cubicles, and the work list referred to in one of these e-mails. The Alliance argues that the County failed to provide these documents in response to its request and, in doing so, violated the PRA.
¶ 53 The three documents were addressed at the summary judgment hearing on May 13, 2008. The Alliance admitted that those three documents had been provided to it by the County in November 2005 in response to a separate public records request. The Alliance went on to argue that "it just shows that there are plenty of records that have Ron Hand's name on it, Steve Harris's name, Steve Davenport." RP (May 13, 2008) at 23. The Alliance clarified that it was not seeking to litigate the issue of whether or not those individuals should have been hired, rather it "just wanted a record that showed their identity." RP (May 13, 2008) at 23.
¶ 54 The documents produced by the Alliance were not sufficient to defeat the County's motion for summary judgment regarding Item 2. Relying on Daines v. Spokane County, 111 Wash.App. 342, 44 P.3d 909 (2002), the County correctly argues that there is no cause of action under the PRA to enforce the re-disclosure of records known by the Alliance to already be in its possession.
¶ 55 In Daines, the plaintiff, Bernard Daineswho was a party to a separate, pending administrative actionsued Spokane County under the PDA, seeking an order to produce e-mails written and received by two county commissioners concerning growth management, as well as statutory per diem penalty and costs for noncompliance. Id. at 344-45, 44 P.3d 909.
¶ 56 In Daines, pursuant to a CR 26 discovery order in an administrative action, the County produced certain e-mails exchanged by the county commissioners. Id. at 345, 44 P.3d 909. Two years later, in February 1999, Mr. Daines submitted a written request under the PDA for all e-mails written and received by two named county commissioners between
¶ 57 January 1, 1997, and February 8, 1999, concerning growth management. Id. Approximately one month later, he asked for copies of all e-mails exchanged by the commissioners between January 1 and April 17, 1997. Id.
¶ 58 The County denied both requests. Id. In a letter to Mr. Daines, the County explained that no records satisfied his requests because e-mail was stored on magnetic discswhich were erased every five days and none of the e-mails requested by Mr. Daines had been saved. Id. However, in reviewing his own files, Mr. Daines came across the materials from the administrative action. Id. The Daines court noted that "[i]t was precisely this discovery that alerted him that the County's response to his request was false." Id. at 348, 44 P.3d 909. Then, "[a]rmed with the knowledge that the records did exist," Mr. Daines filed an action to "enforce strict compliance" with the PDA. Id. at 345-46, 44 P.3d 909. Mr. Daines argued that the PDA required full compliance with requests and claimed that the County's first response was a per se violation of the PDA. Id. at 346, 44 P.3d 909. At trial, Mr. Daines conceded for the sake of argument that the e-mails already in his possession from the administrative action were the very items he requested in the PDA action. Id. at 345, 44 P.3d 909.
¶ 59 This court determined that Mr. Daines was not a "prevailing party" entitled to a remedy under the PDA. Id. at 347, 44 P.3d 909. In light of the fact that Mr. Daines: (1) had the records in his own files before he filed the action, and (2) knew of this fact, the action could not reasonably be regarded as necessary to obtain the information. Id. at 348, 44 P.3d 909. This court *786 went on to state that the statute's purpose "to empower citizens to extract information from reluctant agencies" would not be served under such facts. Id. Accordingly, this court concluded that the PDA did not provide relief to a plaintiff who had the records in hand before the lawsuit was filed. Id.
¶ 60 Here, as in Daines, the Alliance sought to establish a public records violation as the result of the County's failure to produce certain e-mails and documents in response to the May 16, 2005 request. Like the plaintiff in Daines, the Alliance effectively sought to penalize the County for failing to disclose those records, yet again. And while the Alliance also argues that other documents must surely exist, such an argument is entirely speculative and, therefore, insufficient to defeat this part of the County's motion for summary judgment. Thus, the trial court properly granted summary judgment to the County with respect to Item 2.
¶ 61 E. The Alliance's Motion to Compel Discovery. The Alliance next contends that the trial court erred by denying its motion to compel discovery. We review a trial court's decision denying a motion to compel discovery for an abuse of discretion where its decision is manifestly unreasonable or based on untenable grounds or reasons. Lindblad v. Boeing Co., 108 Wash.App. 198, 207, 31 P.3d 1 (2001).
¶ 62 On appeal, the Alliance contends that the County engaged in a pattern of unjustified resistance to discovery. According to the Alliance, public records plaintiffs have the same right to discovery as other plaintiffs under discovery rules. In response, the County first argues that the Alliance waived any argument regarding discovery when it went forward with its own summary judgment motion at the hearing on May 13, 2008. Second, the County argues that the Alliance's discovery was overreaching and exceeded not only the scope of discovery typically allowed in a FOIA case, but also the scope of the May 16, 2005 records request at issue.
¶ 63 The Alliance contends that there is no evidence that Washington courts place more restrictions on discovery in a public records case than any other; rather, discovery is bound only by the civil rules. The Alliance further argues that the subject matter of a public records action goes beyond the simple existence or nonexistence of relevant documents, to include the agency's decision not to disclose records and the grounds for that decision.
¶ 64 The Washington cases cited by the Alliance, however, contain only passing references to discovery and are generally not helpful. But there is substantial federal law on the issue. As noted above, the Washington public disclosure act closely parallels the federal FOIA, "and judicial interpretations of that Act are therefore particularly helpful in construing our own." Smith, 100 Wash.App. at 13, 994 P.2d 857.
¶ 65 In general, discovery is not part of a FOIA case, and the decision whether to allow discovery rests within the discretion of the trial court. Schiller v. Immigration & Naturalization Serv., 205 F.Supp.2d 648, 653 (W.D.Tex.2002). Federal courts typically dispose of FOIA cases on motions for summary judgment before a plaintiff is able to conduct discovery. Id. (citing Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 544 (6th Cir.2001)). "When discovery is permitted it is to be `sparingly granted.'" Id. (quoting Pub. Citizen Health Research Group v. Food & Drug Admin., 997 F.Supp. 56, 72 (D.D.C.1998), aff'd in part, rev'd on other grounds, 185 F.3d 898 (D.C.Cir.1999)).
¶ 66 In an action under FOIA, the scope of discovery is limited to whether complete disclosure has been made by the agency in response to a request for information. Niren v. Immigration & Naturalization Serv., 103 F.R.D. 10, 11 (D.Or.1984). "Whether a thorough search for documents has taken place and whether withheld items are exempt from disclosure are permissible avenues for discovery." Id. In fact, when courts have permitted discovery in FOIA cases, it generally is limited to the scope of the agency's search and its indexing and classification procedures. Schiller, 205 F.Supp.2d at 653-54 (quoting Church of Scientology v. Internal Revenue Serv., 137 F.R.D. 201, 202 (D.Mass.1991)).
*787 ¶ 67 Here, the County persuasively argues that the Alliance's discovery was overreaching. The complaint references only one request for public recordsthe Alliance's May 16, 2005 letter. The discovery sought by the Alliance went far beyond the issue of whether a reasonably adequate search for documents had taken place. Rather, the Alliance inquired into such areas as: hiring practices and job postings; information about County meetings whereby the participants discussed withholding records, the identity of those who make the hiring decisions, the experience and qualifications of those who had applied for the positions of development assistance coordinator 1 and 2, Ms. Knutsen's promotion date and the hiring process by which she was selected for her current position, and facts regarding the hiring of three specifically named individuals who appear to have nothing to do with this case.
¶ 68 Discovery which seeks information concerning "the policies, procedures, and operational guidelines" for an agency's operations "far exceeds the limited scope of discovery usually allowed in a FOIA case concerning factual disputes surrounding the adequacy of the search for documents." Schiller, 205 F.Supp.2d at 654. Accordingly, the trial court did not abuse its discretion by denying the Alliance's motion to compel.
¶ 69 F. Conclusion. The County violated the PRA by failing to conduct a reasonably adequate search for the electronic information log. Accordingly, we reverse the summary judgment related to Item 1 of the Alliance's request and affirm summary judgment in favor of the County on Item 2the identities of Ron and Steve, documents provided to the Alliance under a previous request. We affirm the denial of the motion to compel.
¶ 70 Finally, we remand to the trial court for determination of attorney fees, costs, and penalties against the County pursuant to former RCW 42.17.340(4) (recodified as RCW 42.56.550 in July 2006), and for a determination of attorney fees and costs on appeal related to the issue of the failure of the County to make a reasonably adequate search for the electronic information log. See RAP 18.1(i).
WE CONCUR: SWEENEY and BROWN, JJ.

ORDER DENYING MOTION FOR RECONSIDERATION AND GRANTING MOTION TO PUBLISH
The court has considered Neighborhood Alliance's motion for reconsideration, the response thereto, and the record and file herein, and is of the opinion the motion should be denied.
The court has also considered Spokane County's motion to publish the court's opinion of August 11, 2009, the response thereto, and the record and file herein, and is of the opinion the motion to publish should be granted. Therefore,
IT IS ORDERED the motion for reconsideration is denied.
IT IS FURTHER ORDERED the motion to publish is granted. The opinion filed by the court in August 11, 2009, shall be modified on page 1 to designate it is a published opinion and on page 29 by deletion of the following language:
A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.
NOTES
[1] Effective July 1, 2006, the public records act (PRA), formerly a part of the public disclosure act (PDA), was recodified at chapter 42.56 RCW. LAWS OF 2005, ch. 274, § 103. This case arose in May 2005, prior to recodification and, therefore, citations will be to the code as it existed at that time.
[2] We refer to these requests as Item 1 and Item 2.