[No. 84108-0.   En Banc.]

Argued January 27, 2011.     Decided September 29, 2011.

NEIGHBORHOOD ALLIANCE OF SPOKANE COUNTY, *Petitioner*, v. SPOKANE COUNTY, *Respondent*.

703

704

706

*Breean L. Beggs* (of *Paukert & Troppmann PLLC*) and *Bonne W. Beavers* (of *Center for Justice*), for petitioner.

*Patrick M. Risken* (of *Evans, Craven & Lackie PS*), for respondent.

*Michele Lynn Earl-Hubbard* and *Christopher Roslaniec* on behalf of Allied Daily Newspapers of Washington, Washington Newspaper Publishers Association, The Seattle Times, The Tacoma News Tribune, and The Tri-City Herald, amici curiae.

¶1 C. JOHNSON, J. — This Public Records Act (PRA) case asks us to define the scope of discovery allowed in PRA-provoked lawsuits, what constitutes an adequate search for requested records, and whether a party may be prevailing when it possesses some responsive documents at the time suit is filed. We hold discovery in a PRA case is the same as in any other civil action and is therefore governed only by relevancy considerations, reversing the Court of Appeals' decision. We hereby adopt Freedom of Information Act (FOIA) standards of reasonableness regarding an adequate search, consistent with the Court of Appeals' decision.

*Neighborhood Alliance of Spokane County v. Spokane County*, 153 Wn. App. 241, 224 P.3d 775 (2009) (*NASC*). Finally, since the harm is done at the time the request is made and refused, we hold that a party may be entitled to recover costs and fees if the agency wrongfully fails to disclose documents in response to a request, reversing the Court of Appeals on this issue.

## FACTS AND PROCEDURAL HISTORY

¶2 At its core, this case involves PRA requests that sought to uncover suspected illegal hiring practices in Spokane County's Building and Planning Department (the BPD).[1] On February 16, 2005, a copy machine at the BPD printed copies of an undated office seating chart. Clerk's Papers (CP) at 283-84. The print request came from the BPD employee Pam Knutsen's computer. This chart showed cubicle arrangements of employees at the BPD, but it also included (central to this case) two names within a cubicle, who had not yet been hired, designated "Ron & Steve." CP at 283-84. This caused quite a stir among the BPD employees, many of whom already suspected the BPD of illegal hiring practices. CP at 130, 283, 289. Mark Holman, an Assistant Director of the BPD, saw the chart, cancelled the print job from Knutsen's office, and unplugged the copy machine. CP at 284.

¶3 On February 19, 2005, the seating chart and an accompanying letter were anonymously transmitted to the Neighborhood Alliance of Spokane County (the Alliance). CP at 127-28. The Alliance is a nonprofit, community-based organization that emphasizes government accountability. The letter stated the positions assigned to Ron and Steve had not been posted yet, and alleged other "appointment"

---

[1] When the requests were made, the PRA was called the public disclosure act. Former ch. 42.17 RCW (2003). Effective July 1, 2006, the act was renamed and recodified. LAWS OF 2005, ch. 274, § 103. Although the former act applies to these requests, the relevant provisions are identical and therefore we cite only to the current version.

positions in violation of county policy and employment law. CP at 130.

¶4 The Alliance took interest in this matter when Steve Harris, son of Commissioner Phil Harris, and Ron Hand, a former employee, were hired in March. CP at 91, 257-75. Steve is evidently the third son of Commissioner Harris to be hired by Spokane County (the County), and it was reported in a local newspaper in April 2005. CP at 91, 286. The Alliance first sent a PRA request to the County seeking all records created in January, February, and March 2005 displaying current or proposed office-space assignments for the BPD's planning officials. CP at 277-80. The County provided three iterations of the same seating chart, two of which were dated, and a third, matching the one the Alliance had anonymously received, which was not dated. CP at 277-80. This led to the next PRA request, which is the subject of this case.

¶5 Essentially, the Alliance wanted to know when the "Ron & Steve" seating chart was created. It sought to prove, using the BPD's own records, that the undated chart was created prior to job postings for the positions later filled by Ron and Steve. To that end, it sent the following PRA request to the County:

1) The complete electronic file information logs for the undated county planning division seating chart provided by Ms. Knutsen to the Neighborhood Alliance on May 13th. This information should include, but not necessarily be limited to, the information in the "date created" data field for the document as it exists on the specific Microsoft Publisher electronic document file created for the referenced seating chart. The requested information should also include, but not be limited to, the computer operating system(s) data record indicating the date of creation and dates of modification for the referenced seating chart document.

2) The identities of "Ron & Steve" individuals who are situated near the center of the seating chart referenced in item # 1. Also, the identity of the individual listed as "Steve" in the cubicle with the number 7221 at the top of the chart.

By the term public records, I am invoking a broad definition, consistent with [former] RCW 42.17.020(36) [(2002)] and specifically mean to include records that exist in any electronic form as well as those that exist on paper. This should be read to include, but not be limited to, records preserved in paper correspondence, electronic mail, facsimiles, videotape, and computer files.

Pursuant to [former] RCW 42.17.310 [(2003)], please identify any record covered by the above requests that is being withheld as exempt, and provide a summary of the record's content and the specific reason for the exemption.

CP at 51-52.

¶6 The County provided one document in response to Item #1, a log showing the requested fields, but problematically, the "date created" field was later than the "date modified" field for each of the documents. CP at 56. No explanation was offered for this discrepancy. Regarding Item #2, however, the County replied that the PRA "does not require agencies to explain public records. As such, no response is required." CP at 54.

¶7 It was eventually revealed that Knutsen's computer, which had evidently generated the seating charts, was replaced in April 2005.[2] When the files were copied from the old hard drive to a new hard drive, the date of copying became the date of creation, rather than retaining the original date of creation. CP at 61-62. When the PRA request was submitted in May, Knutsen accessed and copied only the records from her current, new computer. She did not contact the Information Systems Department to determine whether the hard drive of her old computer had been erased, and she had not backed up the file in any other place. While it is unclear exactly when the computer was wiped of all data, the hard drive had certainly been erased

---

[2] Worth noting, Knutsen's computer was replaced quickly following the newspaper article questioning the hiring of Commissioner Harris's son, and no work request or problem report was ever produced (following another PRA request) to explain why it was replaced.

by August 8, 2005, when it was given to another employee. CP at 609-12. Other BPD employees stated that such a file, which would be used administratively, would normally have been copied to a shared server. CP at 287-88, 332. Regarding Item #2, Knutsen did indeed conduct a search, but found "no documents which reference the seating chart and identify the full names of 'Ron and Steve' or 'Steve' therein." CP at 62.

¶8 Following extensive correspondence seeking to resolve the issue, the Alliance filed suit against the County on May 1, 2006. Discovery issues immediately erupted. The County objected to every request for admission, though it did respond to a handful. But it did not respond to interrogatories or requests for production at all. The Alliance next sought to depose Pam Knutsen, and it was finally agreed this would happen in December 2006. CP at 104-05. Before the deposition occurred, the County moved for summary judgment in November 2006. The Alliance sought a continuance and to compel discovery, and in response, the County sought a protective order.

¶9 At the hearing, the Alliance argued a PRA case is no different from any other civil action and the normal court rules applied, so its discovery requests were proper. Verbatim Report of Proceedings (VRP) (Dec. 5, 2006) at 11. But the Alliance agreed to narrow discovery to whether responsive documents existed and the process used to find them, and to delay other potential penalty-related discovery. VRP (Dec. 5, 2006) at 6-7. The hearing on the motion for summary judgment was continued. The trial court ordered the written deposition of Knutsen, narrowed in scope as the Alliance had agreed.

¶10 The deposition occurred in October 2007, but the County still refused to allow Knutsen to answer most questions. It claimed many questions to be outside the scope of discovery in a PRA case. The County used its own conclusions to determine what questions were appropriate, and it did not seek a protective order from the trial court to support its refusal to answer.

¶11 When the hearing resumed, the parties agreed to present their respective motions for summary judgment first, delaying the discovery issues. The Alliance argued that the search regarding Item #1 was inadequate because it included only the one place the complete log would not be found, Knutsen's new computer, and the Alliance attached documents that it alleged would have been responsive to the request in Item #2 to demonstrate the inadequacy of the County's response.[3] CP at 232, 239. The trial court granted summary judgment to the County, finding no evidence that responsive documents did in fact exist.

¶12 On appeal, the Alliance argued that the County failed to conduct adequate searches for records responsive to both items, and that the trial court erred by limiting the scope of discovery. The Court of Appeals agreed with the Alliance regarding Item #1, that the search for the electronic log was inadequate, because the agency had reason to know the record would be stored somewhere other than the place searched. In regard to Item #2, the appellate court did not discuss the adequacy of the search but held that since the Alliance already possessed items responsive to the request before filing suit, the suit was not reasonably necessary to obtain the documents and therefore the Alliance was not a prevailing party under the PRA. Analogizing to FOIA, where discovery is typically not allowed, the Court of Appeals found the Alliance's discovery requests overreaching, and held the trial court did not abuse its discretion by denying the motion to compel. The case was remanded for a determination of attorney fees, costs, and penalties against the County for its inadequate search for Item #1. *NASC*, 153 Wn. App. 241.

---

[3] The documents responsive to Item #2 are e-mails the Alliance received on November 14, 2005, from the County in response to a new request sent October 31, 2005. One e-mail references changes in phone lines due to new employees and references a phone list, which *could* have been responsive. CP at 517. Two others explicitly name Ron Hand and Steve Harris in relation to setting up phones and computers, which the Alliance argues directly relate to cubicle assignments and therefore would have been responsive. CP at 529-30.

¶13 The Alliance petitioned this court for review, arguing that the Court of Appeals' decision regarding discovery was contrary to case law and that this court has rejected FOIA's "prevailing party" doctrine. The County cross petitioned. It argues the Court of Appeals' decision creates a new cause of action under the PRA because it significantly heightened the requirements of an adequate search, and such penalties will continue to accrue until the date of final judgment, including all appeals, thereby punishing an agency for exercising its right to appeal.[4]

## ISSUES

¶14 1. Whether the plaintiff in a PRA action is entitled to the same scope of discovery allowed other civil plaintiffs under Washington's civil discovery rules?

¶15 2. What is an adequate search under the PRA?

¶16 3. Whether a plaintiff is a prevailing party under the PRA if the defendant agency wrongfully holds documents at the time of request but releases them prior to suit in response to a different PRA request?

## ANALYSIS

¶17 The PRA is a strongly worded mandate for broad disclosure of public records. *Burt v. Dep't of Corr.*, 168 Wn.2d 828, 832, 231 P.3d 191 (2010) (quoting *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007)). Passed by popular initiative, it stands for the proposition that "full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free

---

[4] Amici curiae, newspaper associations Allied Daily Newspapers of Washington and Washington Newspaper Publishers Association and daily newspapers The Seattle Times, The Tacoma News Tribune and The Tri-City Herald support the Alliance in its arguments. They also agree with the County that the decision below creates an independent cause of action for the failure to perform an adequate search and embrace this result.

society." *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (*PAWS*); RCW 42.17.001(11). Agencies are required to disclose any public record on request unless it falls within a specific, enumerated exemption. RCW 42.56.070(1).[5] The burden is on the agency to show a withheld record falls within an exemption, and the agency is required to identify the document itself and explain how the specific exemption applies in its response to the request. RCW 42.56.550(1); *Sanders v. State*, 169 Wn.2d 827, 845-46, 240 P.3d 120 (2010).

¶18  Agency actions under the PRA are subject to de novo review. RCW 42.56.550(3). On review, we take into account the policy of the PRA that free and open examination of public records is in the public interest, even if examination may cause inconvenience or embarrassment. RCW 42.56.550(3). Interpretations of law are similarly reviewed de novo. *State v. Kintz*, 169 Wn.2d 537, 545, 238 P.3d 470 (2010) (quoting *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)). Grants of summary judgment are reviewed de novo, and we engage in the same inquiry as the trial court. *Lallas v. Skagit County*, 167 Wn.2d 861, 864, 225 P.3d 910 (2009) (citing *Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 470, 209 P.3d 859 (2009)).

1. The scope of discovery in a PRA case

¶19  As mentioned above, the trial court limited discovery and, in view of limited responses to discovery requests, granted summary judgment to the County. On review, the Court of Appeals affirmed the trial court's ruling and analogized the scope of discovery in a PRA lawsuit to that allowable in a FOIA case. This approach is inconsistent with the civil rules and our cases analyzing this issue.

¶20  We have previously held that, unless express procedural rules have been adopted by statute or otherwise,

[5] The request at issue here was made in May 2005, before the PRA was recodified at chapter 42.56 RCW, but no substantive change was made by the recodification. Laws of 2005, ch. 274, § 103. Citations are therefore made to the current chapter, unless the current code is substantially different from the former.

the general civil rules control. In *Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 105, 117 P.3d 1117 (2005), we considered whether intervention was allowed in a PRA action. We relied on CR 81 to answer this question, which provides that the civil rules govern except where these rules are inconsistent with rules or statutes applicable to special proceedings.[6] What constitutes a "special proceeding" is mostly governed by statute, and the PRA statutes do not create a special proceeding subject to special rules, such as those that apply in proceedings involving garnishment, unlawful detainer, and sexually violent predators. Since the statutes are silent, we held the normal civil rules are appropriate for prosecuting a PRA claim. More specifically, since the PRA statute is silent concerning intervention, we concluded that intervention is therefore allowed in a PRA case. *Spokane Research*, 155 Wn.2d at 104-05. Similarly here, because the PRA is silent about discovery, no reason exists to treat discovery any differently than intervention, especially given the PRA's policy of broad disclosure. We hold, therefore, that the civil rules control discovery in a PRA action.[7]

¶21 Under the court rules, what constitutes relevant discovery is broad. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." CR 26(b)(1). We have previously said that the decision not to disclose

[6] CR 81(a) provides: "Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings. Where statutes relating to special proceedings provide for procedure under former statutes applicable generally to civil actions, the procedure shall be governed by these rules."

[7] The concurrence would instead foreclose discovery until the requester has shown, by more than mere speculation, that the agency's search was inadequate, but the concurrence neglects to provide guidance to a requester seeking to do so without discovery. The legislature is well aware of how to impose limits on litigation, as evidenced by its allowance for hearings solely based on affidavits, RCW 42.56.550(3), and the examples cited in *Spokane Research*, could just have expressly provided limitations upon discovery, but it did not. We should not assume such limitations were intended, by either the legislature or the voters who enacted the PRA, as the concurrence would, in the complete absence of any mention of discovery.

records and the reasons behind that decision "are precisely the subject matter of a suit brought under the Public Records Act." *PAWS*, 125 Wn.2d at 270 n.17. And we expanded this in our most recent *Yousoufian* opinion, which made agency culpability the focus in determining daily penalties, thus making discovery regarding motivation relevant. *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 460, 229 P.3d 735 (2010). Of course, it may be within the trial court's discretion to narrow discovery, but it must not do so in a way that prevents discovery of information relevant to the issues that may arise in a PRA lawsuit.

¶22 As mentioned, the Court of Appeals held that "[d]iscovery that seeks information concerning 'the policies, procedures, and operational guidelines' for an agency's operations 'far exceeds the limited scope of discovery usually allowed in a FOIA case concerning factual disputes surrounding the adequacy of the search for documents,' " so the Alliance's motion to compel discovery was properly denied. *NASC*, 153 Wn. App. at 264-65 (quoting *Schiller v. Immigration & Naturalization Serv.*, 205 F. Supp. 2d 648, 654 (W.D. Tex. 2002)). But the PRA and FOIA are not analogous regarding discovery, because the PRA includes a statutory penalty provision, while FOIA does not.[8] The rules of discovery provide that all relevant information likely to lead to admissible evidence is discoverable. What is relevant in a PRA action will differ from that in a FOIA action, because a PRA action will often involve issues not implicated by FOIA actions.

¶23 For example, the agency's motivation for failing to disclose or for withholding documents is relevant in a PRA action. Whether an agency withheld records in bad faith is the principal factor in determining the amount of a penalty. *Yousoufian*, 168 Wn.2d at 460 (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 37-38, 929 P.2d 389 (1997)). In

---

[8] The concurrence seems to take this as the basis for our holding regarding discovery. As discussed above, discovery is not limited in a PRA case by statutes or case law, and it is therefore governed by the civil rules.

addition to good or bad faith, the agency's overall culpability is the focus of the penalty determination. *Yousoufian*, 168 Wn.2d at 460, 467-68 (listing factors to aid in culpability determination). An agency that sought clarification of a confusing request and in all respects timely complied but mistakenly overlooked a responsive document should be sanctioned less severely than an agency that intentionally withheld known records and then lied in its response to avoid embarrassment. Discovery is required to differentiate between these situations. Here, the Alliance attempted to determine why Knutsen's computer was replaced when it was, through both discovery and subsequent PRA requests. It was, after all, the replacement of Knutsen's computer that foiled the agency in obtaining the record it sought, that is, the "complete electronic file information logs for the undated" seating chart. CP at 51. The County's culpability level would be heightened, therefore, if the computer were replaced and its contents destroyed to prevent disclosure. *See* RCW 42.56.100. Relevancy in a PRA action, then, includes *why* documents were withheld, destroyed, or even lost.

¶24 In this case, the County, in response to most requests, refused discovery completely, as it did not respond to the interrogatories or requests for production at all. This was improper. Under our rules, answers to interrogatories are to be served within 30 days of service, CR 33(a), and the same is true for requests for production, CR 34(b), or else the party must seek a protective order. The County was required to respond to the Alliance's requests. The County additionally objected to and refused to answer deposition questions as being outside the scope of a PRA action, relying on its own interpretations of the PRA statutes and case law. A party must answer deposition questions unless instructed not to because of privilege or discovery abuse. CR 30(d), (h). As in any other civil suit, the County should have responded to the interrogatories and allowed Knutsen to answer the deposition questions or else sought a protective order.

¶25 Since discovery was not allowed to proceed, the record is incomplete, and we remand to the trial court for appropriate discovery. More expansive discovery will likely lead to information or records relevant to the PRA requests made in this case. Although the arguments have focused on the seating chart with the names of Ron and Steve, discovery should predictably reveal who inserted those names into the chart, and whether any documents, communications, or other written materials exist that prompted the inclusion. Discovery that was not so limited would also have revealed what the County did in order to find those documents. The discovery the Alliance was able to obtain shows that the County's search for the requested documents was inadequate, bringing us to the next issue.

2. An adequate search under the PRA

¶26 The PRA is silent about what constitutes an adequate search, and this court has not had reason to address it. The Court of Appeals relied on judicial interpretations of FOIA to answer this question. *NASC*, 153 Wn. App. at 256 (citing *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978) ("The state act closely parallels the federal Freedom of Information Act . . . and thus judicial interpretations of that act are particularly helpful in construing our own.")). Both acts promote open government and FOIA is construed broadly, with its exceptions narrowly tailored, similar to the PRA. *Hearst Corp.*, 90 Wn.2d at 129. Both make virtually every document generated by an agency available to the public unless an exemption applies. *Hearst Corp.*, 90 Wn.2d at 128 (quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136-38, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975)). It follows that standards governing the adequacy of a search will also mirror each other. We agree with the Court of Appeals' approach and hold that the adequacy of a search for records under the PRA is the same as exists under FOIA.

¶27 Under this approach, the focus of the inquiry is not whether responsive documents do in fact exist, but whether

the search itself was adequate. *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995); *Weisberg v. U.S. Dep't of Justice*, 240 U.S. App. D.C. 339, 745 F.2d 1476, 1485 (1984) (quoting *Weisberg v. U.S. Dep't of Justice*, 227 U.S. App. D.C. 253, 705 F.2d 1344, 1350-51 (1983)). The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents. *Weisberg*, 705 F.2d at 1351. What will be considered reasonable will depend on the facts of each case. *Weisberg*, 705 F.2d at 1351. When examining the circumstances of a case, then, the issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found. *Truitt v. Dep't of State*, 283 U.S. App. D.C. 86, 897 F.2d 540, 542 (1990); *Meeropol v. Meese*, 252 U.S. App. D.C. 381, 790 F.2d 942, 956 (1986) ("a search need not be perfect, only adequate").

¶28 Additionally, agencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered. *Valencia-Lucena v. U.S. Coast Guard*, 336 U.S. App. D.C. 386, 180 F.3d 321, 326 (1999). The search should not be limited to one or more places if there are additional sources for the information requested. *Valencia-Lucena*, 180 F.3d at 326. Indeed, "the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 287 U.S. App. D.C. 126, 920 F.2d 57, 68 (1990). This is not to say, of course, that an agency must search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found.

¶29 As the concurrence discusses, many FOIA cases are resolved on motions for summary judgment concerned

with the adequacy of the search.[9] In such situations, the agency bears the burden, beyond material doubt, of showing its search was adequate. *Valencia-Lucena*, 180 F.3d at 325. To do so, the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith. These should include the search terms and the type of search performed, and they should establish that all places likely to contain responsive materials were searched. An agency may wish to include such information in its initial response to the requester, since doing so may avoid litigation.

¶30 Moreover, records are never exempt from disclosure, only production, so an adequate search is required in order to properly disclose responsive documents. *See Sanders*, 169 Wn.2d at 836. The failure to perform an adequate search precludes an adequate response and production. The PRA "treats a failure to properly respond as a denial." *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 750, 174 P.3d 60 (2007) (citing RCW 42.56.550(2), (4) (formerly RCW 42.17.340)). Thus, an inadequate search is comparable to a denial because the result is the same, and should be treated similarly in penalty determinations, at least insofar as the requester may be entitled to costs and reasonable attorney fees under RCW 42.56.550(4).

¶31 Applying this standard, the County's search for both items was inadequate, though here we are concerned only with the first search.[10] For Item #1, the County's search consisted of the only place a complete electronic record

---

[9] The concurrence would delay all discovery until a hearing regarding the adequacy of the search is held. It is unclear how a requester, without the aid of discovery, will be able to rebut the agency's assertion of a reasonable search. A trial court may, of course, limit initial discovery to the adequacy of the search should the parties wish to follow the federal approach, but may not delay all discovery entirely. Not every requester will have the benefit of agency employees aiding in its search for the truth, as the Alliance did here, and so such discovery will be necessary.

[10] Despite its assertion that no response was necessary for Item #2, identifying Ron and Steve, the County did in fact conduct a search for the information, but this search was also inadequate. Knutsen stated "there are no documents which reference the seating chart and identify the full names of 'Ron and Steve' or 'Steve' therein." CP at 62. But the BPD does not refer to such things as "seating charts,"

could not be found: Knutsen's new computer, and Knutsen herself noticed the discrepancy of the "date created" field being later in time than the "date modified" field. CP at 61. Additionally, Knutsen knew her computer had been replaced only a few weeks before the request was made, and had some idea that searching only the new computer would prove unfruitful. But she did not search further, despite the indication that her response would be incomplete, since the request asked for the *complete* electronic record. This illustrates why an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68; *see also Valencia-Lucena*, 180 F.3d at 325 (agency must follow through on obvious leads).

¶32 Rather than following up, the agency's reply was that there were no other documents that would be responsive to this request. But this is conclusory because it does not explain why this is; nor does Knutsen aver that all places likely to contain responsive documents (such as her old computer, a network drive,[11] or the printer record) were searched or were unavailable to be searched. An adequate response to the initial PRA request where records are not disclosed should explain, at least in general terms, the places searched. In a typical case, this rule presents few problems for the agency as the records responsive to the PRA requests will be readily available. Where, as occurred here, the computer containing the record has been de-

---

instead, they are called "floor plans," "reconfiguration charts," or "cubicle layouts." The adequacy of this second search is not before us, but it is worth noting that some courts have found searches inadequate when the searcher limits the search to the terms provided by the requester, even though the searcher uses synonyms to refer to those items, and if the synonyms had been used, the search would have proved fruitful. *See Summers v. U.S. Dep't of Justice*, 934 F. Supp. 458, 461 (D.D.C. 1996) (search using "commitment" but not "appointment" or "diary," as those terms used frequently by agency, was evidence of inadequate search).

[11] Other employees informed the Alliance that such a file would normally have been copied to a shared server, thus alerting the Alliance that the County's search was likely inadequate. This again demonstrates why discovery regarding the adequacy of the search will often be necessary.

stroyed, the agency must look to other locations.[12] This also translates into a further requirement to explain the adequacy of the search in the response to the request.

¶33 The County argues it should not be required to search Knutsen's old computer for requested documents, comparing the old computer to a trash can or recycle bin. But the analogy fails, because the County maintained control over the computer following its transfer to its Information Services Department, unlike trash or recycling that is hauled away.[13] If the agency, after establishing the primary source of requested information, finds that the information is not there, it may not assert the information has been moved so as to avoid its duty to search. The agency must determine where the information has been moved and conduct a search there, where reasonable. Because the County produced nothing to show the old computer was wiped of all data before August 8, 2005, it should reasonably have searched that computer when the Alliance's PRA request was received in May. The Court of Appeals ruled that the County wrongfully withheld documents in violation of the PRA as a result of this inadequate search. We agree and affirm the Court of Appeals reversal of summary judgment in favor of the Alliance as to Item #1.

¶34 The County argues, as does amicus, that finding liability for an inadequate search creates a new cause of action under the PRA. Amicus insists that the failure to adequately search for a record is especially egregious be-

---

[12] An agency is forbidden from destroying responsive documents while a PRA request is pending. RCW 42.56.100. Because of this prohibition, an agency must show that any recently destroyed documents were not wrongfully destroyed, and this naturally will require more discovery regarding the destruction, not less, as the County seems to be advocating here.

[13] At oral argument, the County agreed that if a mistake had been made in the file transfer from the old to the new computer and the County had needed a document from the old computer, there was no question that the County could obtain the record from the computer while it awaited its fate at the Information Services Department, because the computer remained within the County's control. There is little difference between a document needed by the County for its operations and a document needed by the County to fulfill a public records request.

cause the requester may not know responsive documents exist, and therefore would have no basis to challenge an otherwise seemingly adequate response. Amicus relies on *PAWS*, where we said, "The Public Records Act clearly and emphatically prohibits silent withholding by agencies of records relevant to a public records request." *PAWS*, 125 Wn.2d at 270. But we did not explicitly allow the potential silent withholding in *PAWS* to support a freestanding daily penalty award, as is now requested.

¶35 Amicus additionally relies on *Sanders* to argue an inadequate search should be considered an independent cause of action. *Sanders*, 169 Wn.2d at 859-61. In *Sanders*, the responding agency listed exemptions to production in its response, but did not explain how the exemptions applied to the documents. We did not allow a freestanding penalty based on the failure to fully explain exemptions, as this went to the adequacy of the response and not the denial of the right to inspect or copy records. In *Sanders*, some documents were wrongfully withheld, necessitating a daily penalty, so the failure to explain exemptions was considered an aggravating factor in setting the penalty determination. We saved for another day the question of whether the PRA impliedly authorizes a penalty if the requester would otherwise have no remedy. Because the Alliance is similarly already entitled to a remedy, as will be discussed in the next section, we now hold that the failure to perform an adequate search is at least an aggravating factor, to be considered in setting the daily penalty amount.

¶36 An adequate search is a prerequisite to an adequate response, so an inadequate search is a violation of the PRA because it precludes an adequate response. But we again put off for another day the question whether the PRA supports a freestanding daily penalty when an agency conducts an inadequate search but no responsive documents are subsequently produced. A prevailing party in

such an instance is at least entitled to costs and reasonable attorney fees. *Soter*, 162 Wn.2d at 756; RCW 42.56.550(4).[14]

¶37 Finally, the County also argues that the Court of Appeals' imposition of daily penalties punishes an agency for asserting its appeal rights. The County is concerned about a daily penalty award stretching to the final judgment date of this court. This argument ignores the statute, which makes daily penalties applicable only for the time the requester was "denied the right to inspect or copy said public record." RCW 42.56.550(4). Penalties will not continue to accrue after a document is produced, and daily penalties will not accrue at all if the agency carries its burden of showing an adequate search. Further, the amount of the daily penalty award is within the trial court's discretion and it may consider several factors when making this determination. *Yousoufian*, 168 Wn.2d at 466-68.

### 3. Prevailing party under the PRA

¶38 The Court of Appeals held that because the Alliance had the allegedly responsive documents to Item #2 at the time the suit was filed, it could not be a prevailing party regarding that item since the suit was not reasonably necessary to cause the disclosure. As discussed above, a party prevailing against an agency in a PRA action may be awarded costs and attorney fees, and may be awarded daily penalties at the discretion of the trial court. RCW 42.56-

---

[14] This section of RCW 42.56.550 was recently amended in 2011. Laws of 2011, ch. 273, § 1. When this case arose, however, RCW 42.17.340(4) applied, which was identical to the preamendment version of RCW 42.56.550(4), both of which provide: "Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." The amendment deletes "not less than five dollars and" from the final sentence, so that "it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record."

.550(4). But contrary to the Court of Appeals' holding, no causation requirement exists to be a prevailing party in a PRA action. *Spokane Research*, 155 Wn.2d at 103. In *Spokane Research*, we explained,

> Rather, the "prevailing" relates to the legal question of whether the records should have been disclosed *on request*. Subsequent events do not affect the wrongfulness of the agency's initial action to withhold the records if the records were wrongfully withheld at that time. Penalties may be properly assessed for the time between the request and the disclosure, even if the disclosure occurs for reasons unrelated to the lawsuit.

155 Wn.2d at 103-04 (emphasis added). We have additionally held that once a trial court finds an agency violated the PRA, daily penalties are mandatory, but the amount is subject to the trial court's discretion. *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 433, 98 P.3d 463 (2004). A violation therefore results in a remedy, with no discussion of what causes the final disclosure, such as when suit was filed.

¶39 The Court of Appeals reached the opposite result by relying on its previous decision in *Daines v. Spokane County*, 111 Wn. App. 342, 44 P.3d 909 (2002).[15] The *Daines* court held that a party could not be "prevailing" and entitled to a remedy under the PRA when it had the record in its possession and knew of that fact at the time of filing, because the action was not necessary to compel disclosure. The *Daines* court, in turn, relied on *Coalition on Government Spying v. King County Department of Public Safety*, 59 Wn. App. 856, 864, 801 P.2d 1009 (1990). However, we expressly rejected this approach in *Spokane Research*, reasoning that the harm occurs when the record is wrong-

---

[15] In *Daines*, the requesting party was summarily denied his requests for e-mail records. The agency told him none of the e-mails requested had been saved, when in fact the agency had hard copies of those e-mails. The requester discovered some of these in his own files, which had been disclosed via discovery in an earlier action. Knowing the agency had thus violated the PRA by failing to disclose the records in its response, the requester filed suit, at which time the agency sought to comply with his requests.

fully withheld, which usually occurs at the time of response or disclosure. *Spokane Research*, 155 Wn.2d at 103 n.10. Contrary to the *Daines* court's holding, the remedial provisions of the PRA are triggered when an agency fails to properly disclose and produce records, and any intervening disclosure serves only to stop the clock on daily penalties, rather than to eviscerate the remedial provisions altogether. To the extent that *Daines* held otherwise, it is overruled.

¶40 As will generally be true in many cases, a party does not know with certainty that a document in its possession is the public record it seeks until the agency responds. As we have previously recognized, the PRA requires a response to a request and disclosure of all responsive public records held by the agency.[16] The fact that the requesting party possesses the documents does not relieve an agency of its statutory duties, nor diminish the statutory remedies allowed if the agency fails to fulfill those duties. To the extent the Court of Appeals decision here, as in *Daines*, suggests otherwise, we reject that approach and reverse the Court of Appeals on this issue.

¶41 In this instance, the agency refused to produce anything at all for Item #2, saying instead that the PRA "does not require agencies to explain public records. As such, no response is required." CP at 54. This violates the PRA. The request sought public records, not explanations, and if the agency was unclear about what was requested, it was required to seek clarification. The Alliance eventually obtained two e-mails that explicitly named Ron Hand and Steve Harris in relation to setting up phones and computers, which directly relates to cubicle assignments and therefore would have been responsive to Item #2. The Alliance was wrongfully denied these public records be-

---

[16] A record is either "disclosed" or "not disclosed." If the record's existence is revealed to the requester, it is "disclosed" regardless of whether it is produced. *Sanders*, 169 Wn.2d at 836. An undisclosed record results in the prohibited silent withholding discussed in *PAWS*, 125 Wn.2d at 270.

tween the time of the refusal until they were eventually disclosed pursuant to the separate request. We therefore reverse the grant of summary judgment for Alliance regarding Item #2 and remand for a penalty determination.

## CONCLUSION

¶42 We hold that discovery in a PRA case is governed by the civil rules, reversing the Court of Appeals on this issue. We affirm the Court of Appeals' use of FOIA guidelines in determining what constitutes an adequate search, which is governed by a standard of reasonableness. We hold that an inadequate search may be considered an aggravating factor in calculating daily penalties, but cannot, given the record before us, create a freestanding daily penalty award for an inadequate search. We reiterate our prior holding in *Spokane Research*, that litigation need not be the cause of disclosure and a party is entitled to the PRA's remedial provisions when an agency wrongfully refuses to disclose or produce requested records.

¶43 In this case, the County performed an inadequate search regarding Item #1 and wrongfully refused to respond to Item #2. We remand to the trial court for a determination of costs, attorney fees, and daily penalties, following any necessary discovery.

ALEXANDER, CHAMBERS, OWENS, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.

¶44 MADSEN, C.J. (concurring) — I agree with the majority that to determine what constitutes an adequate search for records under the Public Records Act (PRA), chapter 42.56 RCW, we should adopt the federal approach under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2002). However, the majority does not correctly describe the entire federal process nor does the majority follow it.

¶45 Under federal case law, if an agency shows that it has satisfied the reasonableness standard for an adequate search and the requester does not adequately rebut that showing, then summary judgment may be granted. If summary judgment is granted to the agency on the issue of an adequate search, then discovery is unnecessary. For this reason, federal courts often delay discovery if a party seeks summary judgment on the ground that the agency engaged (or did not engage) in an adequate search. If summary judgment is not granted in favor of the agency on the issue, discovery should be available as usual.

¶46 By implementing the federal approach on the adequacy of search issue, including its relationship to discovery, we would achieve several advantages. If the agency establishes that it has adequately searched and has disclosed responsive documents it has found, if any, then discovery may be avoided, along with the costs, time, effort, and possible discovery disputes it entails.

¶47 This approach not only conforms to federal case law respecting the adequacy of a search, it also follows both the letter and the spirit of the PRA and our cases under the act. In the PRA, the legislature expressly provided a speedy and expedient procedure for resolving disputes, which can be accomplished on affidavits alone. Our case law has added that PRA disputes may be resolved on summary judgment as well. As explained in the analysis below, the federal approach to deciding adequacy of an agency's search for requested records is in keeping with both the purpose and the language of the PRA and its preference for a quick resolution.

¶48 However, the majority declines to allow an agency a prediscovery opportunity to submit detailed affidavits under strict standards requiring factually detailed descriptions of how it conducted the search for responsive public records. I disagree on three grounds. First, in declining to permit the opportunity to make an adequacy showing on such affidavits alone, the majority is actually rejecting this

part of the federal standard for establishing the adequacy of a search, notwithstanding its adoption of federal case law under FOIA.

¶49 Second, the majority also implicitly rejects the federal law because it fails to accord the agency's showing a presumption of good faith.

¶50 Third, the majority treats an action claiming an inadequate search for records requested under the PRA as if it is the same as any dispute between civil litigants. This turns what is supposed to be an expeditious way of obtaining records from our government agencies into full blown civil litigation at the summary judgment stage where the entire matter could be quickly resolved rather than through a lengthy and expensive drawn-out process. Full-blown civil litigation, however, is not consistent with the narrow, but important, purposes of the PRA to assure that individuals may obtain public records from their government agencies quickly and expeditiously and that individuals may enjoy the same kind of quick and expeditious process to resolve claims like inadequacy of an agency's search. The consequences are increased costs, time, and effort on the part of the requesters and the agencies, which will have to devote taxpayer-funded time and resources to litigation rather than doing the public work of the agency.

¶51 This does not mean that discovery should never be allowed or that it has no place in a summary judgment proceeding. But we should not encourage discovery prior to the agency's having the opportunity to make its showing on affidavits accorded a presumption of good faith. If the agency does not take the opportunity, or cannot make the detailed showing required, or its showing is rebutted, then obviously it should not prevail on summary judgment and further proceedings will be required. Put another way, the agency's showing has to be detailed and complete to meet all the requirements under federal law, and if it makes that showing, it will establish a prima facie case of adequacy.

¶52 Following the federal approach means that this case should be remanded for the trial court to consider adequacy of the agency's search under the analysis used for public records searches under FOIA. It is likely, as the majority concludes, that summary judgment should not be granted, on the ground that the search was inadequate. However, I would leave it for the trial court to apply the correct legal standard in the first instance.

## Discussion

¶53 As we have noted on many occasions, our state act "closely parallels" FOIA and therefore judicial interpretations of FOIA are "particularly helpful in construing" the PRA. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978); *see O'Connor v. Dep't of Soc. & Health Servs.*, 143 Wn.2d 895, 907, 25 P.3d 426 (2001) (cases interpreting FOIA are often considered when interpreting the state act); *Limstrom v. Ladenburg*, 136 Wn.2d 595, 608, 963 P.2d 869 (1998) (same); *Dawson v. Daly*, 120 Wn.2d 782, 791-92, 845 P.2d 995 (1993) (same), *overruled on other grounds by Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 884 P.2d 592 (1994) (*PAWS*). Just as under the PRA, under FOIA there is a doctrine of full disclosure unless information falls under a clearly delineated exemption, the availability of identified records to a member of the public on demand, and a mandate to construe FOIA broadly and its exemptions narrowly. *Hearst*, 90 Wn.2d at 128-29.[17]

---

[17] In one area, however, the two acts are quite different. Unlike the PRA, FOIA does not have penalty provisions like those in the PRA, which provides for attorney's fees to a successful requester in the event legal action is necessary to obtain requested records and for daily penalties for the time that a document is wrongfully withheld. *Hearst Corp.*, 90 Wn.2d at 129. In addition, some exemptions in the PRA have no FOIA counterpart, and judicial analysis respecting exemptions under FOIA may therefore not be of help when interpreting exemption provisions under the PRA. *Servais v. Port of Bellingham*, 127 Wn.2d 820, 835, 904 P.2d 1124 (1995). For purposes of what constitutes an adequate search, neither of these areas is implicated. However, the penalty issue may require discovery that is not necessary under FOIA, as discussed later in this opinion.

### Adequacy of an agency's search for records; federal approach

¶54 As mentioned, I agree with the majority's conclusion that we should adopt for purposes of the PRA the standard of reasonableness that federal courts apply to assess the adequacy of an agency's search for public records. Unfortunately, the majority's summary of federal law does not provide an entirely accurate picture and, in particular, the majority does not explain or follow federal law describing the actual procedure through which an agency can make a showing of an adequate search and when and how discovery is part of the process.

¶55 As noted, in many cases, resolution of the adequacy issue at the summary judgment stage makes it unnecessary to consider discovery issues. To explain why, I provide a more extensive discussion of federal law respecting adequacy of a search for responsive public records and how this issue affects discovery. I then explain how the federal approach is entirely consistent with the PRA.

¶56 As federal cases show, the issue of whether an agency has adequately searched for public records under FOIA arises quite frequently. An agency responding to a request under FOIA has a duty to conduct a search for responsive records. *Williams v. U.S. Dep't of Justice*, 177 F. App'x 231, 233 (3d Cir. 2006) (unpublished). "An improper withholding may arise from an agency's failure to conduct an adequate search, which 'is "dependent upon the circumstances of the case." ' " *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) (quoting *Weisberg v. U.S. Dep't of Justice*, 227 U.S. App. D.C. 253, 705 F.2d 1344, 1351 (1983) (quoting *Founding Church of Scientology of Wash. D.C., Inc. v. Nat'l Sec. Agency*, 197 U.S. App. D.C. 305, 610 F.2d 824, 834 (1979))); *see Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 29 (D.D.C. 2010). The agency must make a good faith effort to conduct a search for the records requested. *Campbell v. U.S. Dep't of Justice*, 334 U.S. App. D.C. 20, 164 F.3d 20, 27 (1998).

¶57 "The adequacy of an agency's search is measured by a 'standard of reasonableness.' " *Weisberg*, 705 F.2d at 1351 (quoting *McGehee v. Cent. Intelligence Agency*, 225 U.S. App. D.C. 205, 697 F.2d 1095, 1100-01 (1983) (internal citation and quotation marks omitted); *accord Campbell*, 164 F.3d at 27-28; *Maynard v. Cent. Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Gillin v. Internal Revenue Serv.*, 980 F.2d 819, 822 (1st Cir. 1992). "FOIA does not require a perfect search, only a reasonable one." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 362 (4th Cir. 2009); *Meeropol v. Meese*, 252 U.S. App. D.C. 381, 790 F.2d 942, 956 (1986).

¶58 When a requester brings suit under FOIA and claims that an agency has failed to adequately respond to a public records request, the agency has the burden of establishing that its search for the requested records was adequate. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001). The agency must show that it has made the required "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 287 U.S. App. D.C. 126, 920 F.2d 57, 68 (1990); *accord Batton v. Evers*, 598 F.3d 169, 177 (5th Cir. 2010); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009); *Campbell*, 164 F.3d at 27; *Zemansky v. Envt'l Prot. Agency*, 767 F.2d 569 (9th Cir. 1985); *Weisberg v. Dep't of Justice*, 240 U.S. App. D.C. 339, 745 F.2d 1476, 1485 (1984); *Wolf v. Cent. Intelligence Agency*, 569 F. Supp. 2d 1, 8 (D.D.C. 2008).

¶59 This issue is often decided by federal courts on summary judgment. *Rugiero*, 257 F.3d at 544. On a motion for summary judgment, "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (footnote

omitted). The affidavits or declarations must be submitted in good faith and provide a reasonably detailed, nonconclusory account of the scope of the search, providing search terms (for electronic searches), describing the type of search performed, and averring that the agency searched all files likely to contain responsive materials, with this information being sufficient to provide an opportunity for the requesting party to challenge the adequacy of the search if the requester wishes to do so. *Lahr*, 569 F.3d at 986; *Rein*, 553 F.3d at 362-63 (citing *Ethyl Corp. v. U.S. Envt'l Prot. Agency*, 25 F.3d 1241, 1246-47 (4th Cir. 1994)); *Valencia- -Lucena v. U.S. Coast Guard*, 336 U.S. App. D.C. 386, 180 F.3d 321, 326 (1999); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488-89 (2d Cir. 1999); *Oglesby*, 920 F.2d at 68; *Weisberg*, 745 F.2d at 1485; *Kaminsky v. Nat'l Aeronautics & Space Admin.*, 402 F. App'x 617, 617 (2d Cir. 2010) (unpublished); *see Perry v. Block*, 221 U.S. App. D.C. 347, 684 F.2d 121, 127 (1982) ("affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA").

¶60 The affidavit or declaration must be sufficiently detailed to show what records were searched, by whom, and through what process, *Steinberg v. U.S. Dep't of Justice*, 306 U.S. App. D.C. 240, 23 F.3d 548, 552 (1994); *Weisberg v. U.S. Dep't of Justice*, 200 U.S. App. D.C. 312, 627 F.2d 365, 371 (1980). However, the agency does not necessarily have to produce a declaration or affidavit from the individual employee who actually conducted the search; an affidavit or declaration of the agency employee who is responsible for supervising a FOIA search may be sufficient. *Carney*, 19 F.3d at 814; *Maynard*, 986 F.2d at 560; *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 288 U.S. App. D.C. 324, 926 F.2d 1197, 1201 (1991); *Meeropol*, 790 F.2d at 951. Further, the agency does not necessarily have to disclose details about the identity or background of the actual individuals who processed the FOIA request. *Maynard*, 986 F.2d at 563.

¶61 An affidavit or declaration that supplies facts sufficiently indicating that the agency has conducted a thorough search is accorded a presumption of good faith. *Carney*, 19 F.3d at 812; *SafeCard Servs.*, 926 F.2d at 1200; *Kaminsky*, 402 F. App'x at 617; *Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. 2009). Unfortunately, the majority disregards the importance of this presumption.

¶62 Significantly, under FOIA the factual question is not whether the agency recovered every document that might be responsive or whether documents might exist that are possibly responsive to the request, but rather whether the search itself was reasonably calculated to discover documents responsive to the request. *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010); *Trentadue v. Fed. Bureau of Investigation*, 572 F.3d 794, 807 (10th Cir. 2009); *Lahr*, 569 F.3d at 987; *Rein*, 553 F.3d at 362; *Grand Cent. P'ship*, 166 F.3d at 489; *In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992); *Zemansky*, 767 F.2d at 571; *Williams*, 177 F. App'x at 233.

¶63 An agency is not required to search every record system in the agency. *Oglesby*, 920 F.2d at 68; *see also Rein*, 553 F.3d at 364 (a " 'reasonably calculated search' does not require that the agency search every file where a document could possibly exist, but rather requires that the search be reasonable in light of the totality of the circumstances" (citing *SafeCard Servs.*, 926 F.2d at 1201)). "Although agencies must respond to requests under the Act, they are not required to open their doors and invite the public in to peruse their records. For that reason, our review focuses on the adequacy of the agency's search, and not on the chance that additional documents exist." *CareToLive v. Food & Drug Admin*, 631 F.3d 336, 341 (6th Cir. 2011). "The Act does not require that agencies account for all of their documents, so long as they reasonably attempt to locate them." *Id.*

¶64 Of course, an agency is not required to create a document that did not exist in order to satisfy a FOIA

request. *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985); *Yeager v. Drug Enforcement Admin.*, 220 U.S. App. D.C. 1, 678 F.2d 315, 321 (1982). Further, the filing system that an agency uses is generally designed to serve the agency's internal needs, and although an agency must make a diligent effort calculated to uncover the requested document, it "need not restructure its entire system in order to satisfy" a FOIA request. *Miller*, 779 F.2d at 1385.

How a requester may rebut the agency's showing of an adequate search

¶65 Once an agency submits affidavits or declarations in an attempt to show that it conducted an adequate search for records, the requester may respond in several ways (or not at all).

¶66 First, if the "agency *fails to establish* through reasonably detailed affidavits *that its search was reasonable*, the FOIA requester may [defeat] summary judgment merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search." *Maynard*, 986 F.2d at 560 (emphasis added).

¶67 Second, if the requester identifies "specific deficiencies in the agency's response," summary judgment should not be granted. *CareToLive*, 631 F.3d at 341-42. For example, if the agency's own responses show another place where responsive records might be found without an unreasonable burden on the agency, summary judgment should not be granted. *See, e.g., Valencia-Lucena*, 180 F.3d at 326-27 ("if a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment is inappropriate"; here, the search was inadequate because the record itself revealed " 'positive indications of overlooked materials' " (quoting *Founding Church of Scientology*, 610 F.2d at 837)); *Campbell*, 164 F.3d at 28 (search held inadequate where it was evident from the records disclosed by the agency that a search of another records system

would be apt to turn up requested documents). However, even if an agency's affidavits or declarations are initially deficient, "courts generally will request a supplement before ordering discovery." *Reich v. U.S. Dep't of Energy*, 784 F. Supp. 2d 15, 24 (D. Mass. 2011); *accord Wolf*, 569 F. Supp. 2d at 9.

¶68 Third, if the agency has made a prima facie showing of adequacy, as described, then the burden shifts to the plaintiff-requester to provide " 'countervailing evidence' as to the adequacy of the agency's search." *Iturralde v. Comptroller of Currency*, 384 U.S. App. D.C. 230, 315 F.3d 311, 314 (2003). For example, if the requester "is able to show circumstances indicating that further search procedures were available without the [agency's] having to expend more than reasonable effort, then summary judgment would be improper." *Miller*, 779 F.2d at 1385. An agency "cannot limit its search" to only one or more places if there are additional sources "that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68; *see also Campbell*, 164 F.3d at 28. A requester might also produce countervailing evidence that places the agency's identification or retrieval procedure genuinely at issue, thus making summary judgment improper. *Founding Church of Scientology*, 610 F.2d at 836.

¶69 However, an agency's failure to turn up a specific document does not, in and of itself, render the search inadequate. *Lahr*, 569 F.3d at 987; *Rein*, 553 F.3d at 364; *Morley v. Cent. Intelligence Agency*, 378 U.S. App. D.C. 411, 508 F.3d 1108, 1120 (2007); *Iturralde*, 315 F.3d at 315; *Zemansky*, 767 F.2d at 571. Even if the requester identifies specific documents internally referenced in documents released to the requester, and these are not sent to the requester, this, in and of itself, does not establish that the agency's search is inadequate; attacking the competency of the search method because it did not turn up "known and identified documents" does not establish the search was inadequate because the standard of reasonableness does

not require absolute exhaustion of the files—rather, this standard requires a search reasonably calculated to uncover materials requested. *Miller*, 779 F.2d at 1384-85; *see also Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990) ("[t]he adequacy of an agency's search for documents requested under FOIA is judged by a reasonableness standard . . . the agency need not show that its search was exhaustive"), *rev'd on other grounds, U.S. Dep't of State v. Ray*, 502 U.S. 164, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991). That a document once existed does not mean that it presently exists or that the agency that created a file has retained the document. *Miller*, 779 F.2d at 1385; *Williams*, 177 F. App'x at 233.

¶70 Moreover, a requester's " 'mere speculation that as yet uncovered documents might exist' . . . is not enough to 'undermine the determination that the agency conducted an adequate search for the requested records.' " *Morley*, 508 F.3d at 1120 (quoting *Wilbur v. Cent. Intelligence Agency*, 359 U.S. App. D.C. 380, 355 F.3d 675, 678 (2004)); *accord Steinberg*, 23 F.3d at 552; *SafeCard Servs.*, 926 F.2d at 1201; *Moore v. Fed. Bureau of Investigation*, 366 F. App'x 659, 661 (7th Cir. 2010) (unpublished); *Jones-Edwards v. Appeals Bd. Nat'l Sec. Agency*, 196 F. App'x 36, 38 (2d Cir. 2006) (unpublished); *cf. Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 374 U.S. App. D.C. 172, 473 F.3d 312, 318 (2006) (a requester's assertion "that an adequate search would have yielded more documents is mere speculation" insufficient to rebut affidavits describing the agency's search process).

¶71 If the requester fails to present any countervailing evidence or apparent inconsistencies in the proof, and provided the agency has submitted appropriate affidavits or declarations, the agency's affidavits or declarations generally will be sufficient to show compliance with obligations under FOIA. *Trentadue v. Fed. Bureau of Investigation*, 572 F.3d 794, 807 (10th Cir. 2009); *Rugiero*, 257 F.3d at 547; *Becker v. Internal Revenue Serv.*, 34 F.3d 398, 405 (7th Cir. 1994); *Grand Cent. P'ship*, 166 F.3d at 489.

¶72 However, and finally, the requester can still prevent summary judgment in favor of the agency, once the agency has "demonstrate[d] that it has conducted a reasonably thorough search," by producing evidence "that the agency's search was not made in good faith." *Maynard*, 986 F.2d at 560; *see Pietrangelo v. U.S. Army*, 334 F. App'x 358, 360 (2d Cir. 2009) (requester can rebut agency's adequate affidavits by a showing of bad faith sufficient to impugn the agency's affidavits or declarations). However, a mere assertion of bad faith, alone, is not sufficient to overcome a motion for summary judgment. *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 177 F. Supp. 2d 1, 8 (D.D.C. 2001); *see also Maynard*, 986 F.2d at 560 (the presumption of good faith cannot be rebutted by purely speculative claims about the existence and discoverability of other documents). A mere assertion does not meet the nonmoving party's burden to respond to a moving party's facially adequate affidavits.

¶73 As the majority recognizes, this federal framework is appropriate under the PRA. Indeed, it is entirely consistent with the purposes and provisions of the PRA. RCW 42.56-.550 provides a speedy remedy for a requester to obtain a court hearing on whether an agency has violated the PRA. Quick judicial review upon motion and affidavit is authorized, allowing a requester to avoid expensive and prolonged PRA cases that could impede citizens' use of the act. *See O'Neill v. City of Shoreline*, 170 Wn.2d 138, 154-57, 240 P.3d 1149 (2010); RCW 42.56.550(1); WAC 44-14-08004(1); *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990). Under RCW 42.56.550, such a case may be initiated by a motion to show cause, placing the burden on the agency to show cause why it has not violated the PRA. RCW 42.56.550(1). Under RCW 42.56.550(3), a judicial de novo hearing on challenged agency action may be conducted "based solely on affidavits." Like under FOIA, under the PRA the burden of showing compliance with the act is on the agency. RCW 42.56.550(1).

¶74 Thus, similar to the procedure described by federal courts, the PRA expressly contemplates an expedited review where the adequacy of an agency's search can be quickly decided.

¶75 Moreover, the fact that the summary judgment procedure is used in federal court to decide the adequacy of records search is not an impediment to applying the same procedure in this state. We have held that summary judgment is an appropriate procedure in PRA cases, relying on RCW 42.56.550(1) and (3), the specific PRA sections providing that a trial court may conduct a hearing based solely on affidavits and use of in camera review. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 106, 117 P.3d 1117 (2005). In fact, many Washington cases have involved both a motion to show cause, as provided for in RCW 42.56.550(1), and a grant of summary judgment (in whole or in part). *See, e.g., Spokane Research & Def. Fund*, 155 Wn.2d 89; *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 174 P.3d 60 (2007); *Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 618 P.2d 76 (1980); *Gronquist v. Dep't of Corr.*, 159 Wn. App. 576, 247 P.3d 436 (2011); *Guillen v. Pierce County*, 96 Wn. App. 862, 866, 982 P.2d 123 (1999), *rev'd in part on other grounds*, 537 U.S. 129, 123 S. Ct. 720, 154 L. Ed. 2d 610 (2003); *cf. Newman v. King County*, 133 Wn.2d 565, 947 P.2d 712 (1997) (public records case decided on summary judgment); *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 884 P.2d 592 (1994) (*PAWS*) (same).

¶76 Accordingly, when the adequacy of an agency's search for a responsive record is at issue in an action under the PRA, a summary judgment motion on the issue may be made by either party, just as under FOIA, and the agency could submit affidavits or declarations in an attempt to show that it conducted an adequate search and produced all nonexempt responsive records it found. Indeed, the agency itself could commence the action. *See Soter*, 162 Wn.2d at 749-56 (an agency is entitled to seek judicial review of disputed requests for disclosure).

¶77 In addition to being consistent with the PRA, the federal approach to determining the adequacy of an agency search is also consistent with summary judgment standards. For example, mere speculation will not suffice to rebut an agency's prima facie showing of an adequate search. "A nonmoving party in a summary judgment may not rely on speculation [or] argumentative assertions that unresolved factual issues remain," rather, "after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986); *see Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011) ("[m]ere allegations, argumentative assertions, conclusory statements, and speculation do not raise issues of material fact that preclude a grant of summary judgment" to an agency on the issue of whether it has complied with a public records request under the PRA). When an agency makes a prima facie showing it has conducted an adequate search, the requester must rebut that showing, and must do so by more than mere speculation.

Discovery

¶78 The majority declines to follow federal cases decided under FOIA on the issue of discovery in a PRA case. Federal courts often prescribe limits on discovery in FOIA cases, but we are here concerned only with the issue of the adequacy of an agency's search and how discovery fits in this context. The reasonableness standard we adopt for establishing the adequacy of a search through an agency's affidavits directly bears on this issue, as I explain in this opinion. We should follow the federal case law under FOIA to determine whether discovery is appropriate when adequacy of the agency's search is at issue.

¶79 Contrary to the majority, there are no differences between FOIA and the PRA that dictate we should ignore

the federal law in this context. The primary reason that the majority concludes that the PRA and FOIA are not analogous on the issue of discovery is because the PRA includes a statutory penalty provision and FOIA does not.[18] The majority then explains this premise in detail, posing a number of questions related to penalties that may require discovery.

¶80 But the majority's distinction matters only if inquiry into penalties becomes necessary.[19] If a court decides that the agency did not violate the PRA, then penalties are not at issue. More specifically, if a PRA dispute involves the adequacy of the agency's search and this issue is resolved on affidavits by summary judgment in favor of the agency, penalties are never at issue and discovery on this issue is not necessary. Thus, the fact the PRA provides for penalties has no bearing on the question whether adequacy of a search can be resolved on summary judgment without discovery.

¶81 The majority also cites two cases for the proposition that discovery must be allowed under the civil rules because the reasons for not disclosing records are the focus of a suit brought under the PRA. Majority at 715-18. But the majority's conclusion is too broad. While discovery was appropriate in the context of the two cited cases, it may not be necessary in a PRA case where the issue of the adequacy of an agency's search can be resolved on affidavits by summary judgment.

¶82 The first case the majority cites is *PAWS*, 125 Wn.2d at 270 n.17. In *PAWS*, the issue was whether an agency

_____

[18] The majority says that "a PRA action will often involve issues not implicated" under FOIA, majority at 717, but does not identify any issues unrelated to penalties.

[19] The legislature recently amended RCW 42.56.550(4) to provide that a court may award a daily penalty "not to exceed one hundred dollars for each day" that the requester "was denied the right to inspect or copy" the requested record. LAWS OF 2011, ch. 273, § 1. Before this amendment, a trial court had to impose a penalty of at least five dollars a day. Former RCW 42.56.550(4) (2010); former RCW 42.17.340(4) (2005).

could "silently withhold" a record. As the court pointed out, this is not authorized by the PRA. An agency must give a statement of the specific exemption authorizing its withholding of any record. *Id.* at 270; *see* RCW 42.56.550(1). The court said, "The Public Records Act does not allow silent withholding of entire documents or records, any more than it allows silent editing of documents or records. Failure to reveal that some records have been withheld in their entirety gives requesters the misleading impression that all documents relevant to the request have been disclosed." *PAWS*, 125 Wn.2d at 270.

¶83 In the footnote cited by the majority, the court rejected the idea that a decision whether to release a document is "*generically* insulated from pretrial discovery." *Id.* at 270 n.17 (emphasis added). This conclusion is unassailable; nothing supports the idea that discovery is *never* permissible in a PRA case.

¶84 But significantly, in the footnote in *PAWS*, the court also observed: "Of course, the court may decide to conduct a hearing on disputed public records based solely on affidavits," and "[t]his may include affidavits of decisionmakers that they have not silently withheld relevant records." *Id.* Thus, *PAWS* did not open the door to discovery at any time for any purpose, but instead more narrowly rejected the idea that a PAWS suit was "generically insulated" from discovery. Moreover, the court expressly acknowledged that a hearing on affidavits is allowed by the PRA.

¶85 The second case cited by the majority is *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 460, 229 P.3d 735 (2010). This is simply an example of a case where penalties were at issue and as the majority explains, in this context discovery may be necessary.

¶86 Unlike these situations, when an agency sufficiently establishes by affidavit, as allowed by the PRA, that it conducted an adequate search and properly produced any nonexempt responsive records it found, summary judgment may be granted with no issue of "silent withholding" and no

issue of penalties. As explained above, resolving the adequacy of search issue may effectively resolve the entire dispute between a requester and an agency, and negate any need to engage in discovery. As also explained, the agency has the burden of providing sufficient detail to make the prima facie case that it conducted an adequate search.

### Delaying discovery

¶87 Because further proceedings may be avoided if summary judgment on adequacy of a search is granted, federal trial courts may and often do delay discovery until after rulings are made on motions in FOIA cases for summary judgment based on the adequacy of the agency's search. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1133-35 (9th Cir. 2008); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001); *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 369 (11th Cir. 1993). " '[D]iscovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face,' and a district court may forgo discovery and award summary judgment on the basis of submitted affidavits or declarations." *Wood v. Fed. Bureau of Investigation*, 432 F.3d 78, 85 (2d Cir. 2005) (quoting *Carney*, 19 F.3d at 812). When the agency submits affidavits that are reasonably detailed, nonclusory and submitted in good faith, showing an adequate search was conducted, a district court does not abuse its discretion by granting summary judgment without further discovery. *Lovaas v. Bureau of Land Mgmt.*, 393 F. App'x 527 (9th Cir. 2010) (unpublished). Indeed, federal courts have even directed that discovery should be denied if the agency's affidavits or declarations are sufficient. *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002).

¶88 This does not mean that a requester with good reason for pursuing discovery is denied discovery. If, in response to the agency's prima facie showing, the requester produces countervailing evidence or identifies apparent

inconsistencies in the agency's proof, discovery may be in order. *CareToLive*, 631 F.3d at 340-41; *Trentadue*, 572 F.3d at 807; *Perry v. Block*, 221 U.S. App. D.C. 347, 684 F.2d 121, 127 (1982); *Schoenman v. Fed. Bureau of Investigation*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011). In addition, even though there is a presumption of good faith that attaches to the affidavit or declaration of an agency's supervisor over public records searches, if a requester makes a showing of actual bad faith on the agency's part sufficient to impugn the agency's affidavits or declarations, discovery may be justified. *Carney*, 19 F.3d at 812 (citing *Goland v. Cent. Intelligence Agency*, 197 U.S. App. D.C. 25, 607 F.2d 339, 352 (1978), *cert. denied*, 445 U.S. 927 (1980)).

¶89 In short, in many cases an inquiry into the adequacy of a records search under FOIA's reasonableness standard has effectively resolved the issue whether discovery is necessary. If a trial court grants summary judgment on the basis that the agency's affidavits or declarations show the search was adequate and the requester has failed to sufficiently rebut this prima facie showing, there is frequently no remaining issue on which discovery is necessary or appropriate. And even if summary judgment on adequacy of the search does not effectively resolve the case, it would negate any need for discovery on that issue.

¶90 Delaying discovery in these cases can save time, effort, and costs, and can avoid unnecessary litigation and discovery disputes. These significant gains may be achieved at no cost to enforcement of the PRA.

¶91 Delaying discovery can also benefit both requesters and agencies. Under the PRA, requesters are entitled to quick responses to their discovery requests. If there is a dispute about adequacy of an agency's search for responsive documents, it should be resolved quickly. Government agencies should be able to obtain a quick determination that they have sufficiently responded to a request, if this is the case, and so avoid unnecessary expenditure of limited resources. If the agency cannot make a sufficient showing

that it has adequately searched, then this determination can be made expeditiously as well. Delaying rulings on discovery until after any summary judgment rulings on adequacy of a search are decided should be the practice under our PRA, as it is under FOIA.

¶92 Proceeding in this fashion would serve the legislature's obvious preference for deciding PRA cases in an expeditious fashion, as well as its provision for cases to be decided on the basis of affidavits. RCW 42.56.550(1), (3). The legislature's specific approval of in camera review in such summary proceedings also suggests that a simple, expedited approach may resolve such disputes without discovery.[20]

---

[20] Federal courts have also noted that permitting discovery based on mere allegations that the agency failed to conduct an adequate search undermines the large body of case law holding that assertions that an agency failed to produce documents are insufficient to preclude summary judgment. *CareToLive*, 631 F.3d at 345. That is, allowing such discovery is not compatible with the federal case law establishing what constitutes an adequate search and how adequacy may be determined. Given that the majority adopts this case law for purposes of the PRA, the court should also adopt the complementary approach that delays discovery when an agency submits affidavits in an effort to show it has conducted an adequate search until the question of summary judgment on adequacy of the search is resolved.

Contrary to the majority's statement that I would delay all discovery until a hearing on the adequacy of a search is held, majority at 720-21, I do not advocate such a course. What should happen is that the agency should have the opportunity, prior to discovery, to show it has conducted an adequate search. All of the usual rules for summary judgment would apply, and if the agency cannot make an adequate showing sufficient to establish no material question of fact and entitlement to judgment as a matter of law, then the agency cannot prevail. Likewise, if the requester sufficiently rebuts the agency's evidentiary showing to show a material fact question exists or otherwise shows summary judgment is improper, then summary judgment should not be granted to the agency based upon its affidavits. In that event, discovery may very well be necessary to resolve the propriety of the agency's nonproduction of records.

The majority believes that discovery should be permitted to determine whether information may be forthcoming that supports a claim that the agency has withheld nonexempt records that are responsive. This use of discovery is not consistent with the expeditious procedure authorized by the PRA. It is also not consistent with the federal standard for adequacy of a search. As mentioned above, the agency's affidavits are accorded a presumption of good faith. If the agency sets forth information in sufficient detail so as to allow for rebuttal, as required under FOIA, and the requester cannot produce evidence to rebut that showing, the presumption of good faith stands.

### When discovery is necessary

¶93 When the agency fails to make a prima facie case or when the requester effectively rebuts the agency's prima facie case or shows bad faith, discovery may be necessary.

¶94 When discovery is appropriate, several principles regarding discovery in general can be utilized to ensure that discovery conforms to the rights and obligations under the PRA. In some respects, this can create some tension between the provisions for liberal discovery, and the sometimes narrow reach of the PRA. For example, when a requester asks for records of a specific type, this should not serve as a springboard for a broad exploration through discovery into matters not related to the request. There are several principles of discovery that can serve to ensure that discovery is related to the purposes and provisions of the PRA, the specific public records request at issue, and whether additional issues arise, such as motivation, if penalties are in question.

¶95 These include: When discovery is appropriate, the trial judge may grant or deny a motion to compel discovery in the exercise of sound discretion. *See Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 654 P.2d 673 (1982). A discovery request must be relevant to the subject matter of the suit. CR 26(b)(1). A discovery request must be reasonably calculated to lead to the discovery of admissible evidence. *Id.* If improper discovery requests are made, a party can seek a protective order. CR 26(c); *see Rhinehart*, 98 Wn.2d at 256-57 (trial court's decision regarding issuance of a protective order is within the trial court's discretion). A trial court may, on its own initiative, act to limit abusive discovery. CR 26(b). A trial court exercises broad discretion in imposing discovery sanctions. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

---

Although the majority says that it adopts the federal case law for adequacy of a search, it refuses to actually follow important aspects of this case law.

¶96 When granted, discovery should be well managed in PRA cases, as indeed, it should be in all cases.

Discovery in this case

¶97 In the present case, the Neighborhood Alliance of Spokane County requested the complete electronic record of the employee seating charts showing names that did not correspond to then-employed individuals but did correspond to individuals who were subsequently hired. Because the origin of the seating chart that raised the issue of improper hiring was Ms. Knutsen's computer, the County searched that computer but found no additional information. Although an apparently logical place to search was Ms. Knutsen's old computer, the County did not search Ms. Knutsen's old computer prior to its hard drive being destroyed.

¶98 The adequacy of the County's search is therefore an important issue in this case. However, rather than an inquiry into the adequacy of the agency's search under the procedure described by federal courts under FOIA, the PRA dispute in this case became a complicated and lengthy process involving discovery requests and refusals to provide information. While I share the majority's skepticism about the County's ability to make a prima facie case that it adequately searched, and have doubts that the requesters would be unable to rebut such a showing if made, these parties have not had the opportunity to address the issue under the federal approach that the court adopts.

¶99 Unlike the majority, I would not decide this essentially factual issue on appellate review, but instead would remand. We are an appellate court, not a trial court, and we have frequently concluded that remand is the appropriate course when the original proceedings involved the wrong legal standard. *See, e.g., In re Custody of E.A.T.W.*, 168 Wn.2d 335, 227 P.3d 1284 (2010) (remand to the superior court for an adequate cause determination under the proper legal standard); *Antonius v. King County*, 153 Wn.2d 256, 103 P.3d 729 (2004) (remand for implementation of analysis

regarding hostile work environment claim adopted pursuant to federal case law). The same should occur here, where neither the parties nor the trial court has had the benefit of our decision that federal case law on adequacy of a public records search establishes the standard in this state.

¶100 Before any further discovery issues are addressed, the trial court should provide the county the opportunity to present affidavits or declarations on the issue whether its search was adequate. Of course, the ball is in the county's court on this, so to speak, and it need not take the opportunity. I do not think placing the parties at the starting line will cause any serious difficulty, given the effort already expended in this litigation. And, insofar as the parties have acquired any information unknown at the time the Neighborhood Alliance sought the public records from the county, it would be nonsense to think the parties should ignore that information. But since we have adopted a specific, structured method for determining adequacy, familiar under FOIA but new in this state, the parties and the trial court should have the opportunity to use it.

¶101 As I have explained in more detail than the majority, this process can involve shifting burdens—the agency to make the prima facie case, a shift of burden to the requester to rebut the prima facie case if made, and other possible scenarios as well (for example, the agency's failure to make a prima facie case or the requester's ability to make out a case of bad faith). Of course, discovery may prove ultimately necessary in a PRA case involving adequacy of an agency's search, either because the agency is unable to secure summary judgment through affidavits on the issue of having conducted an adequate search or because penalties become an issue.

### Destruction of records

¶102 Because there seems to be an issue in this case regarding possible destruction of a hard drive that might have contained responsive records, I briefly comment on destruction of requested records.

¶103  The PRA recognizes that records may be destroyed by an agency in the ordinary course of operations. However, once records become subject to a public records request, the agency "shall retain possession of the record, and may not destroy or erase the record until the request is resolved." RCW 42.56.100. An electronic version of a requested record is a public record that cannot lawfully be destroyed once it is requested under the PRA. *O'Neill*, 170 Wn.2d at 149. Destruction of a requested record violates the PRA and can lead to imposition of penalties.

¶104  For example, in *Yacobellis v. City of Bellingham*, 55 Wn. App. 706, 780 P.2d 272 (1989), the city refused to produce requested records of raw data collected by the city, claiming that they did not have to be produced because they were reflected in a final report. The city destroyed the raw data records while the request was pending. The court concluded that no exemption applied, that the city's destruction of the records violated the PRA, and that the requester was entitled to attorney fees and penalties for each day he was denied the right to inspect the documents.

¶105  Similarly, under FOIA, generally an agency does not have a duty to retrieve or release documents that it legitimately disposed of prior to a FOIA request. *Chambers v. U.S. Dep't of Interior*, 386 U.S. App. D.C. 239, 568 F.3d 998, 1004 (2009); *McGehee*, 697 F.2d at 1103 n.33; *see also SafeCard Servs.*, 926 F.2d at 1201; *Piper v. Dep't of Justice*, 222 F. App'x 1, 1 (D.C. Cir. 2007) (unpublished). FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980). For example, in *Lechliter v. Rumsfeld*, 182 F. App'x 113, 116 (3d Cir. 2006) (unpublished), the agency's uncontradicted affidavit explained that old papers and folders were regularly purged, e-mail documents were

regularly purged when time and attention allowed, and no documents were ever deliberately destroyed in response to the public records request at issue. The court found no improper withholding because the agency was not required to produce documents " 'if [it] is no longer in possession of the document[s] for a reason that is not itself suspect.' " *Id.* (quoting *SafeCard Servs.*, 926 F.2d at 1201).

¶106 However, an agency violates FOIA if it intentionally transfers or destroys a document after a FOIA request is made that includes the document. *Chambers*, 568 F.3d at 1004; *Forsham v. Califano*, 190 U.S. App. D.C. 231, 587 F.2d 1128, 1136 n.19 (1978) ("a government agency cannot circumvent FOIA by transferring physical possession of its records to a warehouse or like bailee"), *aff'd sub nom. Forsham v. Harris*, 445 U.S. 169, 100 S. Ct. 977, 63 L. Ed. 2d 293 (1980); *see Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 41 (D.D.C. 1998) (magistrate judge told to preside over discovery for the purpose of exploring "the extent to which [the agency] illegally destroyed and discarded responsive information"); *Landmark Legal Found. v. Envt'l Prot. Agency*, 272 F. Supp. 2d 59, 62 (D.D.C. 2003) (referring to earlier litigation where the Environmental Protection Agency (EPA) was held in contempt and ordered to pay costs and fees "caused by EPA's contumacious conduct," that is, destroying "potentially responsive material contained on hard drives and e[-]mail backup tapes").

¶107 If an agency no longer has a document for a reason that is not suspect, however, the agency does not have an obligation to take any further action to produce it, because only improper withholding violates FOIA. *SafeCard Servs.*, 926 F.2d at 1201.

¶108 Under the circumstances in this case, it appears likely that the agency had an obligation to search in places other than the computer that replaced Ms. Knutsen's old computer. However, the case should be remanded for the parties and the trial court to implement the legal standard adopted by the court in this case.

Whether a cause of action should be recognized or freestanding penalties awardable for an inadequate search

¶109 The majority mentions the disagreement about whether there is or should be an independent cause of action for an inadequate search, but does not resolve the matter. The majority addresses the question whether an inadequate search alone supports a "freestanding" daily penalty when an agency conducts an inadequate search followed by an adequate search yielding no responsive documents, but specifically leaves the question for another day. The majority then holds that the agency here conducted an inadequate search and refused to produce responsive records and, therefore, Neighborhood Alliance is a prevailing party entitled to costs and reasonable attorney fees.

¶110 The majority should expressly reject the idea that an inadequate search could form the basis for an independent cause of action under the PRA or support "freestanding" penalties. First, in circumstances where an adequate search would have yielded nonexempt, responsive records, the failure to conduct an adequate search is a failure to properly respond. A failure to properly respond to a public records request is treated as a denial, *Soter*, 162 Wn.2d at 750, which is actionable.

¶111 However, a failure to conduct an adequate search cannot form the basis for an action unless nonexempt responsive records exist at the time the public records request was made. If no responsive records exist, then a court cannot order their production, and the requester can never be a "prevailing party" entitled to costs, attorney fees, or penalties under the PRA. RCW 42.56.550(4) provides for an award of costs and attorney fees to "[a]ny person who prevails against an agency" in a PRA action. Similarly, the statute provides for an award of penalties within the court's discretion to "such person." "Such person" refers back to "[a]ny person who prevails against an agency" and there-

fore penalties are also limited to "prevailing parties." As the majority accurately points out, we have held " 'prevailing' relates to the legal question of whether *the records* should have been disclosed *on request.*" Majority at 726 (emphasis added) (quoting *Spokane Research*, 155 Wn.2d at 103-04).

¶112 But if no responsive document exists, there is no document that could or should have been disclosed on request. Therefore, there is no "prevailing party" when, following an inadequate search, a party subsequently obtains no documents because no responsive documents exist. Our decision in *Spokane Research* forecloses costs and reasonable attorney fees in such circumstances because the party cannot be a "prevailing party," and without "prevailing party" status, there is no statutory entitlement to costs and attorney's fees. Finally, a court cannot order production of records that do not exist.

¶113 The import of this, first, is that there should be no question that "freestanding" daily penalties are not awardable when an agency conducts an inadequate search and ultimately no responsive documents are ever produced/found. No penalties can be awarded at all absent "prevailing party" status. Second, no independent cause of action for inadequacy of a search should exist because there is no possible remedy or relief to be afforded since, if no responsive records exist, there is no possibility that any records can be ordered produced, and no possible attorney fees, costs, or penalties.

¶114 Thus, an inadequate search, in and of itself, cannot be the basis of an independent cause of action under the PRA. Rather, as explained, an inadequate search can be the basis for an action only if responsive records exist but are not produced and, in this event, of course, the improper response is treated as a denial, which is actionable.

¶115 Rather than leave these questions lurking in the background of any PRA request, I would resolve them. Agencies should not fear being sued under the PRA based solely on whether a search is adequate, or fear having

penalties imposed solely based on inadequacy of a search. Only a denial or its equivalent is actionable, and unless an inadequate search results in a failure to produce responsive documents, it is not equivalent to a denial.

## Conclusion

¶116 The federal approach to determining adequacy of an agency's search for records in response to a public records request is entirely consistent with the PRA. However, to obtain all of the benefits it entails, we should adopt it in full and allow parties the opportunity to resolve the adequacy of search issue on affidavits before discovery commences. As federal case law shows, many cases can be resolved in part or in full on summary judgment by following this approach. Time, effort, costs, and avoidance of discovery disputes can all be achieved without any harm to the spirit or letter of the PRA. In fact, the PRA includes specific provisions for just this type of speedy, expeditious inquiry. Discovery is not denied, but it is delayed until it becomes necessary.

¶117 While the majority correctly adopts the federal reasonableness standard for determining the adequacy of a search, it unfortunately does not fully explain the standard or follow it completely.

¶118 This case should be remanded for implementation of the federal standard for adequacy of a search. I would not permit further discovery in this case until the agency has at least an opportunity to make a showing that it conducted an adequate search. Certainly on the record we have, it appears unlikely the attempt would be successful and perhaps the agency will not even make it.

¶119 But while the limited record suggests the County failed to conform its responses to the PRA under the federal approach we adopt, we are an appellate court, not a trial

court. We should not in the first instance resolve the issues in this case under the new standard announced.

FAIRHURST, J., concurs with MADSEN, C.J.