# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TALON N. CUTLER-FLINN, | No. 56986-8-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — Talon Cutler-Flinn appeals the trial court's order dismissing his Public Records Act (PRA), ch. 42.56 RCW, claims against the Department of Corrections (DOC), the orders denying his various discovery motions, and the order granting the DOC's motion for a protective order. Flinn[1] argues that the DOC violated the PRA because it failed to conduct an adequate search in response to his PRA request. Flinn also argues that the court abused its discretion in denying: his motion to amend discovery limits, motion to compel answers to his interrogatories and requests for production, motion for sanctions, and motion to strike the declarations of Denise Vaughn, Kitzi Brannock, and Scott Buttice. Flinn further argues that the court abused its discretion in granting the DOC's motion for a protective order as to the interrogatories at issue. Flinn requests his costs on appeal as the prevailing party.

We hold that the DOC did not violate the PRA because, on this record, it conducted an adequate search. We decline to address Flinn's arguments as to the various discovery orders at

---

[1] The appellant, a self-represented litigant, refers to himself as "Mr. Flinn."

issue because they are not supported with meaningful analysis, citations to authority, or were otherwise harmless error. We deny Flinn's costs on appeal because he is not the prevailing party. Accordingly, we affirm.

FACTS

I.    THE CLASSIFICATION PROCESS

Scott Buttice, a correctional mental health unit supervisor at the Washington State Penitentiary (WSP) in Walla Walla, testified via declaration as to the classification process used by the DOC for incarcerated persons. The classification process is governed by the policy identified as DOC policy 300.380. *See* Classification and Custody Facility Plan Review, State of Washington Department of Corrections, No. 300.380, https://doc.wa.gov/information/policies/files/300380.pdf.

The classification process is a management tool the DOC uses to assign offenders to the least restrictive custody designation that addresses programming and other needs, while providing for safety of personnel, the community, and other offenders. The classification process provides for a graduated release through a systematic decrease in supervision and corresponding increase in offender responsibility and reentry in the community. The process is designed to encourage offender participation in work, education, treatment, and other evidence-based programs.

Classification counselors conduct classification reviews at regular intervals (generally annually) or for specific situations where other needs or changes in circumstances require a classification change. The DOC uses a Custody Facility Plan (CFP) in the classification process, which "reflects the information considered as part of a given classification process and the decisions that are made in that classification action." Clerk's Papers (CP) at 367.

Classification reviews are an informal process and can vary depending on the nature of the review and the specifics of the situation. Typically, the process begins when a DOC counselor talks to the incarcerated individual about the review and answers any questions they may have. The assigned counselor receives the incarcerated individual's input prior to the review, which is then captured in a section in the CFP.

When an incarcerated individual has a classification review, the individual is provided with written notice of the hearing at least 48 hours in advance, unless this notice requirement is waived. The individual is then permitted to attend the hearing, unless they waive their appearance. If the individual waives their appearance, the multi-disciplinary team or facility risk management team (FRMT) holds the classification hearing absent the individual. While referred to as a "hearing," the classification action is short, informal, and more like a discussion. CP at 367.

The CFP is generated in the DOC's Offender Management Network Information (OMNI) system by the individual's assigned classification counselor. When a CFP is drafted "many fields in the [CFP] are automatically generated or auto-filled from information within OMNI and from prior CFPs. Some of the fields that are auto-filled include the 'inmate' section at the top, 'Offender Information,' 'detainers,' 'holds,' 'Community Support,' 'Education,' and '[legal financial obligations] LFOs.'" CP at 368. There are few fields that require manual entries.

DOC staff review the draft CFP that has been auto-generated to ensure that it is accurate, to remove any outdated information, and to add any new information. The type of documents or other information reviewed by the classification counselors for a given classification action would depend on the nature of the review and the recommendations. It also depends on how familiar the classification counselor is with the particular incarcerated individual. For CFPs like the one at issue here, where the incarcerated individual has an extended release date and no proposed transfer

to a different facility, Buttice stated that "there is not much to discuss or decide" at the classification review hearings.  CP at 369.

II.    FLINN'S 2020 CLASSIFICATION HEARING

Flinn is an inmate at the WSP.  He is currently housed in the Baker Unit.  On January 17, 2020, Cindy Meyer, Flinn's assigned DOC counselor, provided Flinn with the classification hearing notice/appearance waiver form.  Flinn signed the form which indicated that he waived his appearance for the classification hearing.[2]

On January 21, Meyer spoke to Flinn about his classification hearing.  Meyer initiated a CFP.  Flinn stated that he wanted to stay in the Baker, Adams, Rainier (BAR) units and transfer to the Adams unit.  Flinn also stated that he did not want to attend his classification hearing.  Meyer recommended that Flinn be promoted from close to medium custody and be retained in the BAR units for protection concerns.

On January 22, Flinn's classification review hearing occurred.  The FRMT also recommended that Flinn should be promoted from close to medium custody and remain in the BAR units for protection concerns.  Steven Sundberg, the correction program manager, approved the CFP on January 29.

III.    FLINN'S PRA REQUEST

On February 18, the DOC received a public records request from Flinn.  The request read: "On [about] Jan. 18th of 2020, my corrections counselor, Cindy Meyers [sic], notified me that I

---

[2] Flinn contends that he specifically requested to attend the hearing and that someone other than him checked the box waiving his appearance in the classification hearing notice/appearance waiver form.  Whether or not Flinn actually marked the waiver box is immaterial to the issues in this appeal.

was having a classification hearing. I am requesting all records used in this classification process." CP at 454. The request was given tracking number P-11804 and assigned to Chase McMillan.

The same day, McMillan sent a routing slip through GovQA to staff at the WSP. GovQA is a web-based record management software the DOC uses to process and manage public records requests. The routing slip asked WSP staff to provide all records used in the classification hearing that were not already located in OnBase.

Kitzi Brannock, the WSP public records coordinator, testified via declaration that she forwarded the routing slip to Meyer for her to identify potentially responsive records. Brannock sent the request to Meyer because she was Flinn's classification counselor and would be the best person to identify what records were used in the relevant classification action.

Meyer responded by completing a search form, which Brannock forwarded to the DOC Public Records Unit (PRU). The search form indicated that Meyer spent 15 minutes searching her e-mail and DOC database resources (such as the DOC public website, OMNI, IDOC, SharePoint, and OnBase). The form also indicated that she did not locate responsive records. Thus, Brannock responded to McMillan that there were no responsive records.

On February 25, McMillan sent a follow up e-mail to Brannock. McMillan wrote "[t]he only record I have from OnBase is the Classification Hearing Notice/Appearance Waiver. To confirm, this is the only record used in the classification process for Mr. Cutler-Flinn? I ask because in the past we have received over 100 responsive records for similar requests." CP at 457. Brannock responded by attaching a copy of the CFP and stating that "[t]his is what they fill out in OMNI. Other than that the only paperwork that is giving [sic] to [the] inmate is the hearing notice for them to sign." CP at 457.

5

McMillan forwarded the e-mail chain to his supervisor, Sarah Deede. Deede e-mailed Brannock stating that,

> I am working with [McMillan] on this request. The request is not for all of the paperwork given to the offender. The request is for all of the records **used** for the classification hearing. The Counselor, I assume, reviews different records and screens in OMNI to conduct classification hearings. We need all of those records.
>
> Could you please reach out to his Counselor Cindy Meyer to obtain those?

CP at 456-57 (emphasis in original).

Brannock responded, "All they review is what I provided [the CFP]. I did call her [to] speak to her about this request. She has nothing but the Classification Hearing Notice/Appearance Waiver. Please let me know if I can further assist." CP at 456. Deede replied, "Thanks so much for reaching out again. We have received different responses regarding these types of requests so I just wanted to double check." CP at 456.

Brannock testified via declaration that, "I am familiar [with] other public record requests for records used in classification hearing[s]. In my experience I have seen a varying amount of records provided. But ultimately, I have to rely on the information provided to me by the individuals involved in the specific classification action." CP at 476.

The same day, on February 25, McMillan sent a letter acknowledging Flinn's public records request. He understood Flinn's request to seek the disclosure of the following records: "A copy of all records used in the classification process for your classification hearing scheduled on/about January 18, 2020." CP at 460. McMillan stated that the DOC was in the process of searching for records responsive to the request and anticipated being able to provide an installment of records within 32 business days, on or before April 9.

On February 26, McMillan sent a letter to Flinn indicating that five pages of responsive records were identified. He also provided information about the cost of obtaining a copy of the records.

On March 16, the DOC received payment from Flinn and the DOC disclosed the five pages of responsive records with certain redactions. These records were the classification hearing notice/appearance waiver form and the CFP from the January 2020 classification action. The DOC closed the request.

IV.     THE DOC'S RESPONSE PROCESS TO PUBLIC RECORDS REQUESTS

Denise Vaughn is the DOC's Information Governance Director. In this role, she oversees the management of agency records and supervises the DOC's PRU. The PRU is a centralized unit located at the DOC's headquarters in Tumwater. The PRU is comprised of 27 full-time staff, including 4 administrative staff, 16 public records specialists, 2 management analysts, 4 unit supervisors, and the information governance director, Vaughn.

The DOC operates 12 facilities, 86 field offices, and 6 community justice centers. The DOC manages over 13,500 incarcerated offenders and supervises approximately 13,000 offenders in the community. The DOC currently has a staff of approximately 8,500 individuals, which makes it the second largest agency in the state in terms of employment. The DOC does not have one centralized records system that stores all of the DOC's records. Each facility maintains some records for the offenders and employees at that particular facility, including central files and medical files.

Vaughn stated that there are a number of electronic systems that contain records about incarcerated individuals. Two such systems include OMNI and OnBase. OMNI is an electronic case management system that contains information about DOC offenders. The system is web-

based and on the State Government Network. OnBase is an enterprise content management system that is used to store and manage documents throughout the state. Like OMNI, OnBase is web-based and connected to the State Government Network.

Vaughn also stated that the DOC receives thousands of public records requests each year. In 2020, the DOC received a total of 12,659 public records requests. Of these requests, 6,067 were general public records requests of which 5,663 (93 percent) were assigned to the PRU at DOC headquarters. Due to her role at DOC, Vaughn has access to records related to the DOC's processing and handling of public requests that are kept by the agency in the ordinary course of business.

V.    PROCEDURAL HISTORY

On June 1, Flinn filed a complaint in Thurston County Superior Court, alleging that the DOC violated the PRA (1) by failing to conduct an adequate search for responsive records and (2) by failing to respond to his records request "within the terms and time frames of the PRA." CP at 4. Flinn propounded upon DOC a set of interrogatories and requests for production along with the complaint.

Prior to the merits hearing, Flinn filed numerous discovery motions. Flinn filed a motion seeking to amend the case schedule, remove limits on discovery, and to strike the order for leave to depose him. The court denied this motion. Flinn filed a motion to compel the DOC to answer the above discussed interrogatories. In response to the motion to compel, the DOC moved for a protective order under CR 26(c) with respect to several interrogatories. Flinn also filed a motion for sanctions under CR 26(g).

On October 18, Flinn filed his brief arguing that (1) he requested identifiable public records, (2) the DOC silently withheld public records, and (3) the DOC failed to conduct an

adequate search in response to his records request. Relevant here, Flinn argued that the DOC conducted an inadequate search because WSP staff only searched OnBase for records (which only produced the CFP and classification notice) and never conducted a second search when they realized the CFP identified several records used in the classification process located in Flinn's electronic and central files.

The DOC argued it did not violate the PRA because Flinn's request was not a request for identifiable public record, but rather for information. The DOC also argued that it did not violate the PRA because it conducted an adequate search and no evidence suggested that it silently withheld records.

On December 23, Flinn filed his reply brief, arguing that the DOC failed to carry its burden to prove that it conducted an adequate search because it failed to submit the declarations of Meyer, McMillan, and Deede (the individuals involved in search). Flinn also argued that the DOC conducted an inadequate search because Meyer only spent 15 minutes searching for records.

Along with his rely brief, Flinn filed a motion to strike his deposition transcript and the declarations of Vaughn, Brannock, and Buttice. Flinn also filed a motion renewing his motion to compel and motion for sanctions regarding the interrogatories at issue.

On April 29, 2022, the trial court entered an order granting the DOC's motion for a protective order as to several interrogatories. The court denied Flinn's motion to compel. The court also denied Flinn's motion for sanctions.

The same day, the court entered an additional order dismissing Flinn's PRA claims, denying his motions to strike, denying his motion to compel, and denying his motion for sanctions. As to the merits, the court found that Flinn's request was for identifiable public records, but that

the DOC's search was reasonable, and therefore, adequate. Accordingly, the court concluded that the DOC did not violate the PRA in response to Flinn's request. Flinn appeals.

ANALYSIS

I.    ADEQUATE SEARCH

Flinn argues that the DOC violated the PRA because it failed to conduct an adequate search in response to his request. We disagree.

A.    Legal Principles

Under the PRA, agencies are required to disclose public records unless they fall within a specific, enumerated exemption. RCW 42.56.070(1); *West v. City of Tacoma*, 12 Wn. App. 2d 45, 70, 456 P.3d 894 (2020). "The PRA is a strongly worded mandate for broad disclosure of public records." *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 714, 261 P.3d 119 (2011).

"We review agency actions under the PRA de novo." *West*, 12 Wn. App. 2d at 70. "In reviewing a PRA request, we stand in the same position as the trial court." *West v. Port of Olympia*, 183 Wn. App. 306, 311, 333 P.3d 488 (2014). "Therefore, where (as here) the record consists of only affidavits, memoranda of law, and other documentary evidence, we are not bound by the superior court's factual findings." *Id*. at 312.

The failure to locate and produce a record is not a per se violation of the PRA. *See Block v. City of Gold Bar*, 189 Wn. App. 262, 274, 355 P.3d 266 (2015). Instead, the touchstone is the adequacy of the agency's search. *Id*. "[T]he mere fact that a record is eventually found does not itself establish the inadequacy of an agency's search." *West*, 12 Wn. App. 2d at 79. An adequate search is one that "is reasonably calculated to uncover all relevant records." *Cantu v. Yakima Sch. Dist. No. 7*, 23 Wn. App. 2d 57, 83, 514 P.3d 661 (2022). What will be considered reasonable will

depend on the facts of each case. *Id*. We review the search as a whole to determine if it was reasonably calculated to produce responsive records. *Id*. at 85

Under this standard, the agency need not "search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found." *Neigh. All.*, 172 Wn.2d at 720. Thus, "agencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered." *Id*. "'[T]he agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" *Id*. (quoting *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (1990)).

B.      The DOC Performed an Adequate Search

Here, the DOC performed an adequate search because the search was reasonably calculated to uncover all relevant records. When McMillan received Flinn's request, he searched OnBase for responsive records and forwarded the request to WSP—the facility where Flinn is housed. The public records coordinator for WSP, Brannock, then forwarded the request to Meyer because she was Flinn's assigned classification counselor and would be the best person to identify what records were used in Flinn's classification action. Meyer's search form in turn indicated that she searched all places where responsive records may reasonably likely be found, such as e-mails, OnBase, and OMNI. Thus, as a whole, the DOC performed more than a perfunctory search by directing the response to the facility where Flinn was located and by looking into multiple databases and e-mail chains.

Additionally, the DOC performed an adequate search because McMillan followed through on obvious leads in his response to Flinn's request. As explained above, McMillan followed up with WSP for a second time acknowledging that similar requests have generated far more records.

However, Brannock clarified via e-mail that she spoke to Meyer a second time indicating that all that Meyer reviewed was the CFP and classification notice.

Because the DOC's search, as a whole, was reasonably calculated to uncover all responsive records and was more than perfunctory, we hold that the DOC did not violate the PRA.

Flinn argues that the DOC failed to conduct an adequate search because DOC staff failed to search the records referenced in the CFP. We disagree because the record demonstrates that the referenced information in the CFP are auto-filled from OMNI. Thus, while there may be additional records referenced by the CFP, that does not necessarily mean that Meyer used or reviewed those particular records in Flinn's classification hearing. In fact, the record shows that Meyer used only the CFP itself and the classification notice. Accordingly, this argument fails.

Flinn appears to argue that the DOC failed to conduct an adequate search because Meyer only spent 15 minutes searching for responsive records and merely checked the boxes on the search form. We disagree because Flinn's argument improperly focuses on the conduct of Meyer alone. We consider the scope of the agency's search as a whole. *Cantu*, 23 Wn. App. 2d at 85. And as explained above, the DOC's search *as whole* was more than perfunctory because several persons searched different databases and e-mails.

Flinn also appears to argue that the DOC failed to conduct an adequate search because the WSP did not ask other staff involved in the classification (such as the FRMT members) to conduct a search. We disagree because, as Flinn omits mentioning, the CFP is initiated by the counselor and that Buttice testified (via declaration) that DOC staff review only the draft CFP that has been auto-generated to ensure that it is accurate. In fact, the record shows that the FRMT members present for Flinn's classification hearing either did not review any records prior to the hearing or only reviewed the CFP.

Flinn contends that the FRMT "must review" certain records in a classification hearing when an individual, such as himself, is housed in a mental health residential unit. Br. of Appellant at 3. It is true that DOC policy 300.380 provides that the "FRMT must review all work program referrals, custody promotions, and any FRMT activities for offenders housed in mental health Residential Treatment Units." CP at 376. However, Flinn's citation to the record does not support his statement that he is housed in a such a unit. In fact, the CFP at issue indicates that Flinn is a "Regular Inmate." CP at 400. Even more so, the CFP contains all the information that the policy mentions, thus supporting Buttice's declaration discussed above. Accordingly, this argument fails.

Even if we were to take Flinn at his word—that he was housed in a mental health residential unit—we conclude that his argument would still fail because, under the PRA, the agency need not "search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found." *Neigh. All.*, 172 Wn.2d at 720. Thus, the DOC's search was appropriately focused on the places where responsive records could be located and the DOC's reliance on Meyer's responses were reasonable.

Flinn further argues that the DOC conducted an inadequate search because McMillan knew that similar requests had received over 100 responsive pages and should have conducted an independent search in his electronic file. We disagree because the record shows that the type of records reviewed by DOC counselors vary for a given classification based on the counselor's familiarity with the incarcerated individual. Thus, the fact that other similar requests may have generated more responsive records is not indicative of what records were "used" in this particular classification hearing.

Additionally, Flinn's argument also fails because McMillan could not have conducted an independent search for WSP's records. As Vaughn's declaration demonstrates, the DOC does not

have one centralized records system that stores all of the DOC's records. Rather, each facility maintains some records for the offenders and employees and that particular facility, including central files and medical files. Accordingly, this argument fails.

We hold that the DOC conducted an adequate search and did not violate the PRA.

II.    DISCOVERY ORDERS NOT SUPPORTED BY MEANINGFUL ANALYSIS OR CITATIONS TO AUTHORITY

As to the various discovery orders, the DOC argues that we should decline to address the merits of Flinn's claims for two reasons. First, the DOC argues that we should decline to address Flinn's discovery claims because all of his arguments are either conclusory, given passing treatment, or not supported by citation to authority. Second, the DOC argues that Flinn also fails to show how the trial court's discovery rulings, even if they constituted an abuse of discretion, would undermine the court's ruling on the merits. We agree with DOC on both contentions.

As a pro se litigant, Flinn is held to the same standard as an attorney and must comply with all procedural rules on appeal. *See In re Estate of Little*, 9 Wn. App. 2d 262, 274 n.4, 444 P.3d 23 (2019). In accordance with these rules, an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). "Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010). Additionally, "we do not consider conclusory arguments that are unsupported by citation to authority." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014).

"It is not the responsibility of this court to attempt to discern what it is appellant may have intended to assert that might somehow have merit." *Port Susan Chapel of the Woods v. Port Susan Camping Club*, 50 Wn. App. 176, 188, 746 P.2d 816 (1987). And "'[p]assing treatment of an issue

or lack of reasoned argument is insufficient to merit judicial consideration.'" *In re Guardianship of Ursich*, 10 Wn. App. 2d 263, 278, 448 P.3d 112 (2019) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)).

Here, Flinn dedicates much of his briefing to various discovery orders, but he fails to provide any meaningful analysis as to how the trial court abused its discretion. For example, Flinn fails to show how his purported discovery requests are not covered by the attorney-client or work product privilege, not overboard or unreasonably burdensome, and reasonably calculated to lead to the discovery of admissible evidence. Likewise, Flinn's briefing also fails to cite to authority for various propositions throughout his brief and only provides passing treatment of the issues. Because Flinn fails to provide any meaningful analysis or citation to legal authority, we decline to address the merits of his appeal as to the discovery orders.

Second, the DOC argues that Flinn also fails to show how the trial court's discovery rulings, even if they constituted an abuse of discretion, would undermine the court's ruling on the merits. The DOC appears to advance a harmless error argument here. We agree.

In *West*, we applied the harmless error test to a PRA case: "When an error is committed, unless there is reasonable probability that the error changed the outcome of the proceeding or prejudiced a party, the error is harmless." 12 Wn. App. 2d at 83.

Here, even if the trial court abused its discretion in denying Flinn's discovery motions and granting the DOC's motion for a protective order, such errors are harmless. There is no reasonable probability the outcome would have changed because past DOC policies and the DOC's responses to other PRA requests are simply irrelevant to the adequacy of DOC's search in response to this particular request.

56986-8-II

III.    COSTS

Flinn argues that he is entitled to costs under RCW 42.56.550(4) and RAP 18.1 because he is the prevailing party on appeal.  We deny Flinn's request because he is not the prevailing party on appeal.  RCW 42.56.550(4).

## CONCLUSION

We affirm the trial court's order dismissing Flinn's PRA claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

 

 

_____
Veljacic, J.

We concur:

_____
Cruser, A.C.J.

_____
Che, J.

16